997 So.2d 46 (2008)
STATE of Louisiana
v.
Panos TSOLAINOS.
No. 2007 KW 2443.
Court of Appeal of Louisiana, First Circuit.
October 10, 2008.
*47 Walter P. Reed, District Attorney, Dale E. Branch, Assistant District Attorney, Covington, Louisiana, for Respondent, State of Louisiana.
Harry Rosenberg, New Orleans, Louisiana, for Relator, Panos Tsolainos.
Before PARRO, KUHN, and DOWNING, JJ.
PER CURIAM.
Relator seeks review of the trial court's judgment denying the claims presented in the application for post conviction relief. For the following reasons, the writ application is denied.
The facts of the offense are taken from the appeal opinion. Relator and his ex-wife, Deborah Tsolainos, were involved in an ongoing dispute regarding the custody of their two minor children and the settlement of the community property. While relator was in jail on charges that he had conspired to kill his ex-wife, Deborah was awarded custody of the minor children and temporary use of the residence located on Morgan Bluff Road in Pearl River, Louisiana. After relator bonded out of jail, on July 19, 1998, at approximately 6 p.m., relator and his girlfriend, Connie Deville, went to the residence in Connie's mother's Buick Skylark to finish retrieving personal property they had stored at the residence. As relator prepared to leave, he and Deborah became involved in an argument. Deborah approached the passenger side of the vehicle where Connie was seated, and beat on the window. While relator began backing the vehicle out of the driveway, Connie attempted to exit, and fell to the ground. Relator then pressed the accelerator, aimed the vehicle at Deborah, and rapidly proceeded forward, striking her in the middle. Deborah landed on the hood of the vehicle. Relator continued to accelerate forward and hit a tree. The force of the impact threw Deborah off the hood and onto the ground. The vehicle flipped over and landed on Deborah. Upon arriving at the residence, sheriff's officials found Deborah's body partially wedged beneath the overturned Buick Skylark. Despite rescue efforts, Deborah was pronounced dead shortly thereafter. Relator, who was still present on the scene, was arrested and taken into custody.
Following a jury trial, relator was convicted of second degree murder. The trial court sentenced relator to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. This court affirmed relator's conviction and sentence. See State v. Tsolainos, XXXX-XXXX (La.App. 1st Cir.12/31/03), 864 So.2d 905 (unpublished), writ denied, XXXX-XXXX (La.7/2/04), 877 So.2d 144, cert. denied, 543 U.S. 1186, 125 S.Ct. 1395, 161 L.Ed.2d 189 (2005). Relator filed an application for post conviction relief. Following the presentation of testimony at an evidentiary hearing, the trial court issued written reasons for judgment denying the claims presented in the application for post conviction relief. In the application for post conviction relief, relator presented thirteen claims, many of which were raised and disposed of on appeal.[1] However, relator asserted three legal claims which implicate constitutional concerns, which will now be addressed.

RIGHT TO CONFRONTATION
The appeal opinion reflects that to assist in proving intent to kill, the State *48 introduced testimony concerning relator's participation in a conspiracy to kill Deborah Tsolainos. At trial, Detective John Scallan of the St. Tammany Parish Sheriff's Office testified concerning the details of the conspiracy. Scallan testified that he was contacted by Charles "Tinker" Schmolke, a confidential informant. Schmolke disclosed that Gerald Branigan had approached him and requested his assistance in killing relator's ex-wife. At Scallan's request, Schmolke agreed to meet with the co-conspirators while wearing an electronic transmitting and recording device. Three meetings occurred. Scallan listened to and attempted to record the conversations of these meetings. However, due to a malfunction in the recording device, Scallan successfully recorded only the first meeting. At trial, Scallan testified that Schmolke's conversation with Branigan corroborated the conspiracy information initially relayed by Schmolke. Relator's step-daughter, Melissa Tsolainos was charged along with Branigan in a single bill of information with conspiracy to murder Deborah Tsolainos.[2] At trial, Melissa and Branigan both invoked the Fifth Amendment privilege against self-incrimination and did not testify. Schmolke, the confidential police informant, was unavailable because he committed suicide before trial.
Relator alleges that he was deprived of his constitutional right to confront Melissa, Branigan, and Schmolke in violation of the ruling handed down in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). At trial, the court overruled relator's objection and allowed Scallan's testimony to be introduced. This court affirmed the lower court's decision to admit the testimony, relying on the now overruled decision of Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Relator asserts that "the Crawford ruling is now controlling," and that this court should address the application of Crawford to the instant case.
The Confrontation Clause of the Sixth Amendment provides: "[i]n all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him." U.S. Const. amend. VI. In Crawford, the United States Supreme Court overruled Ohio v. Roberts. Under Roberts, 448 U.S. at 66, 100 S.Ct. at 2539, the Confrontation Clause did not bar admission of an unavailable declarant's statement if the statement fell under a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." In Crawford, a new rule was announced when the Supreme Court held that out-of-court statements by witnesses that are testimonial are barred, under the Confrontation Clause, unless witnesses are unavailable and the defendant had the prior opportunity to cross-examine the witnesses, regardless of whether such statements are deemed reliable by the court.
The Crawford court distinguished between nontestimonial and testimonial hearsay. The Supreme Court explained that it would be consistent with the Framers' intent to permit the states flexibility in the development of hearsay law. While the Supreme Court specifically declined to define "testimonial," it recognized that, at a minimum, testimonial statements include "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and police interrogations." Crawford, 541 U.S. at 68, 124 S.Ct. at 1374.
The recording at issue in the instant case occurred between a confidential informant and one of defendant's co-conspirators. *49 Courts that have addressed similar issues have found that surreptitiously monitored conversations and statements are not "testimonial" for purposes of Crawford. See United States v. Hendricks, 395 F.3d 173, 181 (3d Cir.2005); see also United States v. Bobb, 471 F.3d 491, 499 (3d Cir.2006), cert. denied, ___ U.S. ___, 127 S.Ct. 2083, 167 L.Ed.2d 802 (2007). Moreover, co-conspirators' statements are nontestimonial. Hendricks, 395 F.3d at 183-84; United States v. Robinson, 367 F.3d 278, 292 n. 20 (5th Cir.2004), cert. denied, 543 U.S. 1005, 125 S.Ct. 623, 160 L.Ed.2d 466 (2004); United States v. Reyes, 362 F.3d 536, 541 n. 4 (8th Cir. 2004), cert. denied, 542 U.S. 945, 124 S.Ct. 2926, 159 L.Ed.2d 826 (2004). Accordingly, in the instant case, the recorded conversation is not excluded under Crawford. Because Melissa did not testify and no statements made by her were admitted into evidence, relator was not deprived of his right to confront Melissa. Relator did have the opportunity to cross-examine Detective Scallan at trial. Thus, this claim is without merit.

RIGHT TO COUNSEL
Relator alleges that the State violated his Sixth Amendment right to counsel. Relator asserts that because he had counsel for the earlier conspiracy arrest, the police could not question him on the subsequent murder arrest without counsel. The State submits that this is just another way of presenting the argument that relator's statement made to the police after his murder arrest should have been suppressed.
In Texas v. Cobb, 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001), respondent had been convicted of capital murder. His confession to police was used to obtain the conviction. On his appeal, respondent, relying on Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), argued that, because counsel was appointed in an earlier burglary case, the police were therefore required to secure counsel's permission before interrogating him on the subsequent murder charge. The Court of Criminal Appeals had reversed respondent's conviction by a divided vote and remanded for a new trial. The State sought review. Certiorari was granted to consider first whether the Sixth Amendment right to counsel extends to crimes that are "factually related" to those that have actually been charged, and second whether respondent made a valid unilateral waiver of that right. The Supreme Court noted that at the time respondent confessed to the murders, he had been indicted for burglary but had not been charged in the murders. As defined by Texas law, these crimes are not the same offense under Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Accordingly, the Supreme Court held that the Sixth Amendment right to counsel did not bar police from interrogating respondent regarding the murders, and respondent's confession was therefore admissible. Cobb, 532 U.S. at 173, 121 S.Ct. at 1344.
In the instant case, the facts reflect that relator was arrested in early July 1998, for the conspiracy charge. Relator bonded out on that charge. He apparently retained counsel in relation to the conspiracy charge. The instant offense occurred approximately two weeks later on July 19, 1998. When sheriff's officials arrived at the scene of the instant offense, relator was immediately taken into custody. While in custody, relator admitted having struck his wife with the vehicle but claimed it was an accident. In order to resolve whether the conspiracy and the uncharged murder offense are the same under the Blockburger test, it must be determined whether "each provision requires *50 proof of a fact which the other does not." Clearly, the charges are not the same under Blockburger since the conspiracy charge required proof of facts (an agreement and an act in furtherance of the object of the agreement) that a murder charge does not. See State v. Guillory, 540 So.2d 1212, 1218 (La.App. 3d Cir.1989). Accordingly, this claim is without merit.

SELECTION OF GRAND JURY FOREPERSON
Relator asserts that Louisiana's former practice of having the presiding judge appoint a person from the venire as the grand jury foreperson resulted in racial discrimination in the selection of the foreperson in St. Tammany Parish, and violated his constitutional right to due process. Relator alleges that his case raises the same constitutional infirmity enunciated in Campbell v. Louisiana, 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998).
At the time of relator's indictment, Article 413(B) of the Louisiana Code of Criminal Procedure provided that the court shall select one person from the grand jury venire to serve as foreman of the grand jury. Pursuant to 1999 La. Acts, No. 984, § 1, paragraph B was amended to provide that the court shall cause a random selection to be made of one person from the impaneled grand jury to serve as foreman of the grand jury. In Campbell v. Louisiana, the United States Supreme Court held that a white defendant has standing to raise an equal protection challenge to discrimination against black persons in the selection of the grand jury. The Supreme Court also said that, under Louisiana's grand jury selection process, whereby eleven grand jurors are selected by lot but the foreperson (who is the twelfth grand juror) is selected by the judge, a claim of discrimination in the selection of the grand jury foreperson must be treated as a claim of discrimination in the selection of the grand jury itself.
Even if Campbell v. Louisiana applied to relator's case, relator did not preserve the issue of discrimination in the selection of the grand jury foreman by asserting the claim in a motion to quash. A motion to quash is the appropriate vehicle for challenging the composition and selection process of a grand jury, and the failure to file a pretrial motion to quash waives any challenge to the grand jury. Deloch v. Whitley, 96-1901 (La. 11/22/96), 684 So.2d 349; see also State v. Langley, 95-1489 (La.4/14/98), 711 So.2d 651, 675. Campbell v. Louisiana was decided on April 21, 1998, which was before relator was indicted. Although the record in this case indicates that relator did file a motion to quash the indictment, relator failed to raise the discrimination claim in the motion and failed to raise this issue on appeal. Relator alleges that the trial court erred in denying this claim because it is based upon newly discovered evidence and he was not previously aware of the judicial scheme that resulted in the racial discrimination. There is no authority that supports excusing the failure to preserve the issue in a timely filed motion to quash. This claim is without merit.

DECREE
Finding no merit in the issues presented in the application for post conviction relief, we deny the writ application.
WRIT DENIED.
NOTES
[1] Unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered. La.Code Crim. P. art. 930.4(A). An appellate court itself may invoke the mandatory procedural bar of Article 930.4(A). See Carlin v. Cain, 97-2390 (La.3/13/98), 706 So.2d 968 (per curiam).
[2] See State v. Branigan, XXXX-XXXX (La.App. 1st Cir.3/30/01), 798 So.2d 328 (unpublished), writ denied, XXXX-XXXX (La.3/28/02), 812 So.2d 645.