# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 17, 2012

Lyle W. Cayce
Clerk

No. 10-70008

WILLIE JEROME MANNING,

> Petitioner-Appellant Cross-Appellee,

v.

CHRISTOPHER EPPS, Commissioner, Mississippi Department of Corrections,

> Respondent-Appellee Cross-Appellant.

Appeals from the United States District Court for the
Northern District of Mississippi

Before KING, STEWART, and HAYNES, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Petitioner-Appellant Willie Jerome Manning was convicted in Mississippi of capital murder for the 1992 murders of Tiffany Miller and Jon Steckler. He filed a petition for habeas relief in the United States District Court for the Northern District of Mississippi.

While acknowledging that Manning's habeas petition was filed more than one year after the state court judgment became final, the district court found that equitable tolling was warranted under the circumstances. On the merits, the district court denied habeas relief on all grounds raised, but granted a

1

Certificate of Appealability ("COA") on Manning's *Batson* claims and on Manning's claim of ineffective assistance of counsel during the penalty phase of his trial. Manning subsequently filed a motion to expand the COA with this court. The State of Mississippi ("State") appeals the district court's judgment holding that Manning's *Batson* claims were not procedurally barred and that the statute of limitations under the Antiterrorism and Effective Death Penalty Act ("AEDPA") was equitably tolled in Manning's case.

As AEDPA's statute of limitations had run when he filed his application for postconviction relief, and tolling is not warranted under these circumstances, we DISMISS Manning's petition for a writ of habeas corpus and DENY his motion to expand the COA.

## I.

On November 7, 1994, Manning was convicted for the December 1992 murders of Tiffany Miller and Jon Steckler. The two were last seen alive in the early morning hours of December 11, 1992, outside of Steckler's fraternity house near Mississippi State University. The couple left the house around 1 a.m. in Miller's car. At 2:15 a.m., Steckler was discovered lying in the right hand lane of a road. Near his body, authorities found a gold token, three shell casings, and a projectile. Steckler's injuries were consistent with having been run over by a car at a low speed. Miller's body was discovered in the nearby woods. She had been shot twice in the face. Miller's car was discovered in front of an apartment building nearby. On the pavement near the driver's side door, coins were found as well as a ring identified as belonging to Miller, all about 100 yards away from Miller's residence. A police investigation led to Manning's arrest.

At trial, Steckler's fraternity brother, John Wise, testified that he had loaned his car keys to Steckler so he could retrieve something from Wise's car. When Wise went downstairs to the car later that evening, he realized that his car had been burglarized. Stolen from the car was a portable CD player and adapter, a brown leather jacket, a silver monogrammed huggie, loose change,

and a token unique to a gas station and KFC restaurant in Grenada, Mississippi.

Evidence was also presented at trial that Manning had attempted to sell Steckler's class ring and a watch matching the description of one belonging to Steckler. Wise identified the coin found at the murder scene as the same type of token that was stolen from his car. Wise's huggie was found when a fire hydrant close to a known residence of Manning's was flushed out.

In a subsequent investigation, Wise's stolen leather jacket was found in the home of Manning's on-again, off-again live-in girlfriend, Paula Hathorn. Hathorn directed authorities to a tree, which she explained was Manning's chosen location for target practice. After obtaining a warrant, investigators recovered projectiles from the base of the tree that matched the projectiles found at the scene of the crime. Hathorn testified at trial that Manning told her that he was going to Jackson, Mississippi with a gun. When he returned, he no longer had the gun but brought back several of the items reported missing by Wise, including Wise's leather jacket and CD player. Additional evidence was presented at trial placing Manning near the scene of the crimes, as was evidence of incriminating statements made by Manning to two of his jailhouse inmates, Frank Parker and Earl Jordan.

At trial, Manning was represented by Mark Williamson, who handled the guilt phase, and Richard Burdine, who handled the sentencing phase. Manning was convicted of two counts of capital murder on November 7, 1994. Prior to the sentencing phase, Williamson sent five letters to Burdine containing contact information for potential witnesses in the sentencing phase. He also instructed Williamson to take pictures of Manning's childhood house. He further provided extensive notes from John Holdridge, then an attorney with the Mississippi and Louisiana Capital Trial Assistance Project, who had interviewed Manning. Burdine did not follow up on any of the leads from Williamson or Holdridge. Instead, he presented only two witnesses during the sentencing phase: Manning's mother and aunt. The jury returned a death verdict on November 8,

1994. On Count 1, the murder of Jon Steckler, the jury found as aggravating circumstances that the murder was committed during the commission of a robbery, and that it was especially heinous, atrocious, and cruel. On Count 2, the murder of Tiffany Miller, the jury found that the murder was committed during a robbery and that it was committed during a kidnapping.

On direct appeal, Manning was represented by Williamson and a new lawyer, Clive Stafford Smith. Williamson and Stafford Smith contended, among other arguments, that Manning received ineffective assistance of counsel at the sentencing phase of his trial. They argued that even the limited record available on direct review established an ineffective assistance of counsel claim. Manning's death sentence was affirmed on direct appeal and certiorari was denied by the Supreme Court on April 5, 1999. *Manning v. State*, 726 So. 2d 1152, 1183 (Miss. 1998), *cert. denied*, *Manning v. Mississippi*, 526 U.S. 1056 (1999).

Manning then sought to file an application for postconviction relief in state court. Prior to the application being filed, two attorneys were appointed to assist Manning with his application for postconviction relief, but both withdrew before filing an application, citing their own inability to handle capital cases. Eventually, David Voisin and Robert Mink were appointed, and they filed Manning's application on October 8, 2001. In his postconviction proceedings, Manning submitted an affidavit from Gary Mooers, Ph.D., a professor of social work at the University of Mississippi, in which Mooers averred that further investigation of Manning's upbringing was warranted. He also submitted an affidavit from Marc Zimmerman, Ph.D., a specialist in forensic psychology and forensic neuropsychology, opining that Manning needed to undergo neuropsychological testing. Further, Manning submitted an affidavit from Holdridge incorporating Manning's notes. Manning's application for state postconviction relief was denied on March 9, 2006. *Manning v. State*, 929 So. 2d 885, 905 (Miss. 2006).

On October 12, 2005, Manning filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After Manning filed his petition, Mississippi moved for summary judgment based on Manning's failure to file timely his application for postconviction relief. The district court denied Mississippi's motion. The district court ruled that Manning's statute of limitations was equitably tolled, noting that the Mississippi Supreme Court "twice suspended the filing deadline for Petitioner's post-conviction application due to the inaction of the judicial system and appointed counsel." Therefore, the district court ruled that Manning's time for filing an application for postconviction relief should have started running when the Office of Capital Post-Conviction Counsel was appointed on November 17, 2000.

In his federal habeas petition, Manning sought relief on a number of grounds. The district court permitted Manning to supplement the record with additional evidence, including a report from Dr. Zimmerman regarding Manning's neuropsychological condition. While the district court issued a COA on Manning's *Batson* claim and on his claim that his trial counsel rendered ineffective assistance of counsel at the sentencing phase of his trial, it denied relief on both claims. It also denied a COA on his other claims. On appeal, Manning seeks relief on his *Batson* claim and his claim for ineffective assistance of counsel at the sentencing phase, and also moves for an expanded COA on his other claims. The State cross-appeals, contending that the district court improperly held that Manning's *Batson* claims were not procedurally barred and that the AEDPA statute of limitations was equitably tolled in Manning's case.

As we resolve this case on statute of limitations grounds, we need only address the parties' arguments regarding equitable and statutory tolling.

## II.

We review a district court's decision regarding statutory tolling under AEDPA de novo, but review a district court's decision regarding equitable tolling for abuse of discretion. *See Prieto v. Quarterman*, 456 F.3d 511, 514 (5th Cir.

5

2006). However, as "a court by definition abuses its discretion when it makes an error of law," *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002), we review the conclusions of law that underlie the district court's ruling on equitable tolling de novo. *See Fisher v. Johnson*, 174 F.3d 710, 713 & n.9 (5th Cir. 1999); *see also Wickware v. Thaler*, 404 F. App'x 856, 858 (5th Cir. 2010).

## III.

AEDPA requires that petitioners file applications for writs of habeas corpus one year from the latest of the following four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). The judgment against Manning became final on April 5, 1999, when the United States Supreme Court denied Manning's petition for a writ of certiorari. Thus, absent tolling, the statute of limitations for him to file an application for postconviction relief ran on April 5, 2000. *See* § 2244(d)(1)(A). Manning did not file his petition for postconviction relief with the Mississippi Supreme Court until October 8, 2001.

The district court ruled that Manning was entitled to equitable tolling but not statutory tolling. Manning argues that he is entitled to both equitable tolling and statutory tolling, based largely on Mississippi's failure to appoint competent counsel to represent him. We consider both arguments.

### 1.

Mississippi's process for appointing Manning's postconviction counsel was circuitous and complicated. On May 5, 1999, the Circuit Court of Oktibbeha County appointed Pearson Liddell as postconviction counsel for Manning and ordered him to file a petition with the state supreme court by June 4, 1999. Liddell did not do this. Instead, he filed a motion to withdraw from Manning's representation on June 2, 1999, citing his "most limited knowledged [sic.] and familiarity with post-conviction proceedings at all." The motion urged the court to appoint Stafford Smith, Manning's counsel on direct appeal, to represent Manning in his state postconviction proceeding. It pointed to Stafford Smith's experience handling postconviction issues. While the Circuit Court did not respond to this motion, the Mississippi Supreme Court took note of Manning's failure to file any postconviction pleadings and ordered Liddell to take some action in a November 5, 1999 order. Liddell responded by pointing to his motion to withdraw from Manning's case. The Mississippi Supreme Court postponed the deadline for filing state postconviction relief until the issue was resolved.

The Circuit Court then issued an order on January 10, 2000, that did not acknowledge Liddell's motion to withdraw, but instead ruled that "sua sponte" it was appointing J. Dudley Williams to represent Manning. Williams also appears not to have done anything to assist Manning. On April 11, 2000, Williams moved to withdraw, citing his own lack of qualifications. The Mississippi Supreme Court again extended Manning's time to file a petition for state postconviction relief. On November 17, 2000–more than nineteen months after Manning's judgment had become final for AEDPA purposes–the Circuit Court granted Williams' motion to withdraw. On that date, the Circuit Court appointed the Office of Capital Post-Conviction Counsel to represent Manning.[1] Manning then filed a skeletal petition for postconviction relief on February 2,

---

[1] Manning also accuses the Mississippi court system of misconduct following the Circuit Court's appointment of the Office of Capital Post-Conviction Counsel to represent Manning on November 17, 2000. As this occurred long after his AEDPA statute of limitations had run, these allegations do not excuse his failure to act prior to November 17, 2000.

2001, almost twenty-two months after his judgment became final. The Mississippi Supreme Court rejected this petition. With the assistance of counsel, Manning then filed a full petition for postconviction relief on October 8, 2001.

**2.**

We first consider whether equitable tolling is warranted under these circumstances. "[E]quity is not intended for those who sleep on their rights." *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010) (quoting *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006)). To establish his entitlement to equitable tolling, a petitioner must "sho[w] (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (internal quotation marks omitted). The diligence required is "reasonable diligence," not "maximum feasible diligence." *Id.* at 2565. Only "extraordinary" cases justify the invocation of equitable tolling, *id.* at 2564, but "the statute of limitations must not be applied too harshly" because "dismissing a first § 2255 motion or habeas petition is a particularly serious matter." *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (internal quotation marks omitted).

The district court ruled that Manning used due diligence once competent counsel was appointed, thus excusing him from failing to exercise due diligence when he was represented by incompetent counsel. On appeal, Mississippi challenges the district court's determination. It contends that the appointment of incompetent counsel is not a sufficient basis for equitable tolling. Even if Manning were represented by incompetent counsel, Mississippi argues, Manning could have acted on his own to ensure that his application was filed within a year. His failure to do so, Mississippi maintains, establishes that he did not act with the diligence required by *Holland* to invoke equitable tolling. Manning defends the district court's ruling. He contends that the first two lawyers appointed by Mississippi to represent him did not vindicate his state-guaranteed right to receive competent representation in postconviction proceedings. *See*

8

*Jackson v. State*, 732 So. 2d 187 (Miss. 1999). In failing to file his application for postconviction relief within a year, he argues that he was relying on Mississippi's postponements of his state postconviction proceedings and its implied promise to provide competent counsel to Manning. Once competent counsel was appointed, Manning maintains, his application for postconviction relief was filed quickly. Thus, he argues, he diligently pursued his claim, and Mississippi's conduct renders this an "extraordinary" case.

Manning's arguments are foreclosed by precedent. While we assume without deciding that *Holland*'s "extraordinary circumstance" prong is satisfied,[2] we invoke equitable tolling only when petitioners demonstrate that they have acted with due diligence. 130 S. Ct. at 2562. The district court's ruling was based on the faulty premise that petitioners for habeas corpus need not do anything to comply with the AEDPA statute of limitations when they are represented by incompetent counsel.[3] Based on this premise, the district court

---

[2] In a recent decision, the Supreme Court held that complete attorney abandonment can constitute the kind of "extraordinary circumstances" necessary to supply cause for a procedural default. *Maples v. Thomas*, 132 S. Ct. 912, 924 (2012). It further indicated that the "extraordinary circumstances" necessary to supply cause for a procedural default are similar to the "extraordinary circumstances" required to establish a petitioner's entitlement to equitable tolling. *Id.* at 923 n. 7. However, the Court did not retreat from the equitable tolling standard set forth in *Holland*, which requires petitioners to demonstrate both diligence and extraordinary circumstances. 130 S. Ct. at 2562. In *Maples*, moreover, the attorney's abandonment resulted in the petitioner being unaware of a ruling that triggered a deadline, and the petitioner acted quickly once he learned of the missed deadline. 132 S. Ct. at 920-21. Manning makes no similar claim. Thus, attorney abandonment can qualify as an extraordinary circumstance for equitable tolling purposes, but does not, by itself, excuse the petitioner from his duty of diligence.

[3] The district court explained its decision as follows:

November 17, 2000, the date on which Petitioner's second court-appointed attorney was allowed to withdraw and current counsel appointed, marks the earliest date Petitioner could fairly begin the state post-conviction review process. Petitioner's state post-conviction application was filed within one year of that date . . .

While there is no constitutional right to counsel on state post-conviction or federal habeas review, there is a justified expectation that the State will follow-through on its promise to appoint qualified, competent counsel. In this

did not consider in its equitable tolling analysis the time period between April 5, 1999 and November 17, 2000, during which Manning appears to have done nothing to further his legal claims. Manning does not cite, and we do not know of, any other decisions holding under similar circumstances that such an extended period of inactivity constitutes due diligence under AEDPA.

In fact, our precedent instructs that petitioners seeking to establish due diligence must exercise diligence even when they receive inadequate legal representation. Our cases hold that "ineffective assistance of counsel is irrelevant to the tolling decision because a prisoner has no right to counsel during post-conviction proceedings." *United States v. Petty*, 530 F.3d 361, 366 (5th Cir. 2008); *see also Riggs*, 314 F.3d at 798-800 (holding that district court abused its discretion by granting equitable tolling under AEDPA based on "incorrect legal advice" of petitioner's lawyer). The "act of retaining an attorney does not absolve the petitioner of his responsibility for overseeing the attorney's conduct or the preparation of the petition." *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004) (Sotomayor, J.). Because pro se petitioners are expected to comply with AEDPA's statute of limitations, it would be unfair to expect less from petitioners who are represented by counsel. *Id.* Thus, the district court abused its discretion when it held that Manning's obligation to exercise due diligence was not triggered until the state appointed competent counsel. As far as the record shows, Manning knew his conviction had become final,[4] but he neither

---

case, the Mississippi Supreme Court twice suspended the filing deadline for Petitioner's post-conviction application due to the inaction of the judicial system and appointed counsel. It would be unfair to now state that Petitioner should not have relied upon that suspension. Unlike a *pro se* petitioner who missed a filing deadline through inaction or ignorance of the law, Petitioner had appointed counsel who had been ordered to file post-conviction pleadings on his behalf. To argue Petitioner should have earlier filed a *pro se* petition despite having the promise of appointed counsel, the suspension of filing deadlines, and an unserved and misfiled court order is unreasonable and belies the unique circumstance of incarceration that demands equitable tolling in this case.

[4] Manning points to two of our cases that have excused the failure to act in a timely manner under certain circumstances. Specifically, Manning notes that we have invoked

encouraged his first two attorneys to file his application for postconviction relief nor inquired about the status of his application. For a period of more than nineteen months, then, he relied on his appointed counsel to comply with all applicable statute of limitations.[5]

Such reliance, perhaps occasioned by the admittedly tangled procedural history that we have described, does not constitute "due diligence" as courts have interpreted that phrase. Complete inactivity in the face of no communication from counsel does not constitute diligence.[6] Manning's inactivity contrasts starkly with those cases in which courts have held that petitioners exercised due diligence. In *Holland*, for instance, the Supreme Court explained the lengths to which the petitioner went to monitor his lawyer's conduct:

Here, Collins failed to file Holland's federal petition on time despite

equitable tolling when states have failed to notify petitioners that their application for state postconviction relief had been denied, *see Hardy v. Quarterman*, 577 F.3d 596, 598-99 (5th Cir. 2009), and when the district court has misled a petitioner regarding the deadline for his habeas petition, *see Prieto*, 456 F.3d at 515. Both of these cases are distinguishable. In *Hardy*, we held that petitioners act with due diligence when they regularly inquire as to the status of their application with the state court, and then act expeditiously to file their petition for federal habeas relief once they learn their application for state postconviction relief has been denied. *See* 577 F.3d at 598-99. Unlike the petitioner in *Hardy*, Manning does not argue that he failed to comply with AEDPA's statute of limitations because he was unaware that his application for state postconviction relief had been denied. Manning was therefore able to begin work on his application for postconviction relief immediately after his conviction had become final, in contrast to the petitioner in *Hardy*. In *Prieto*, we held that a district court's extension of time to file a federal habeas petition beyond AEDPA's statute of limitations constituted a basis for equitable tolling, when the petitioner was diligent in seeking the extension and complied with the time allowed by the district court. 456 F.3d at 514-15. Unlike the petitioner in *Prieto*, Manning was given no reason to believe that his time to file his federal habeas petition had been extended. While the Mississippi Supreme Court several times extended the deadline to file his petition for state postconviction relief, it never purported to provide him with additional time to file a federal habeas petition.

[5] In fact, the first evidence of activity from Manning was his filing of a skeletal pro se application on February 2, 2001, which occurred almost twenty-two months after his judgment became final. But given that Mississippi appears to have misfiled the order appointing the Office of Capital Post-Conviction Counsel on November 17, 2000, we give him the benefit of that date for the purposes of this opinion.

[6] We do not consider here the circumstance of a counsel misleading his client into believing that activity is taking place. There is no indication that Manning's counsel made any misrepresentations to Manning.

> Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

130 S. Ct. at 2564. Similarly, in *Mathis*, we held that the petitioner exercised due diligence when, after his AEDPA statute of limitations began to run on June 20, 2002, he filed a federal petition on April 3, 2003; a successive state petition on June 20, 2003; "immediately acted to preserve his state *Atkins* claim by requesting a stay and abeyance from the district court"; and "moved–albeit unsuccessfully–for reconsideration in the Texas state court of the denial of his second state habeas petition." 616 F.3d at 474. Thus, we wrote that "despite procedural difficulties," petitioner had "sought relief in multiple tribunals in an effort to raise his *Atkins* claim," including filing two petitions for relief within a year of his AEDPA statute of limitations beginning to run. *See id.*

Manning, conversely, did nothing for more than nineteen months after his conviction became final. We have held that litigants who acted more promptly than Manning failed to exercise due diligence. *See, e.g., Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999) (holding that petitioner did not exercise due diligence when he waited six months from learning of the denial of his application for state postconviction relief to file a federal habeas petition); *Fisher*, 174 F.3d at 714 (holding that petitioner who filed his application for state relief two days before the AEDPA statute of limitations ran, and then filed his federal habeas petition seventeen days after the AEDPA statute of limitations ran, did not exercise due diligence, even though he did not know of AEDPA's statute of limitations until forty-three days after the limitations period started to run).

Manning contends that he did not pursue his habeas claim because he was entitled to rely on Mississippi's guarantee of competent counsel in postconviction proceedings. This amounts to an assertion that Mississippi abrogated petitioners' duty under AEDPA to pursue claims diligently when it recognized a right to counsel in state postconviction proceedings. The Supreme Court has expressly rejected such reasoning. "[A] State's effort to assist prisoners in postconviction proceedings does not make the State accountable for a prisoner's delay." *Lawrence v. Florida*, 549 U.S. 327, 337 (2007). Here, as in *Lawrence*, Mississippi did not "prevent[] [Manning] from hiring his own attorney or from representing himself," and "[i]t would be perverse indeed if providing prisoners with postconviction counsel deprived States of the benefit of the AEDPA statute of limitations." *See id.* Accordingly, Manning's argument is unavailing.[7]

We also reject Manning's contention that his case is like others where we have tolled AEDPA's statute of limitations because a state had prevented a petitioner from timely filing of his application. Equitable tolling can be available "if the plaintiff [was] actively misled by the defendant about the cause of action or [was] prevented in some extraordinary way from asserting his rights." *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (alteration in original) (citation and internal quotation marks omitted). We therefore found that an extraordinary circumstance was present when a Louisiana state court set an incorrect return date on petitioner's application for a supervisory writ, causing petitioner to miss Louisiana's filing deadline and thereby lose his "pending" application for state postconviction relief under § 2244(d)(2). *Melancon v. Kaylo*, 259 F.3d 401, 407-08 (5th Cir. 2001). But the result in *Melancon* undercuts Manning's argument. Equitable tolling was unavailable to the petitioner, we

---

[7] Manning also argues that Mississippi's counsel should have taken some affirmative action to ensure competent counsel was appointed. But since the failure of Mississippi's court system to appoint competent counsel did not relieve Manning of his duty to exercise due diligence, it follows that Mississippi's counsel's failure to object to the appointment of incompetent counsel did not affect Manning's obligation to exercise due diligence.

13

held in *Melancon*, because he did not file his federal habeas petition until more than four months after the denial of his application for a supervisory writ. *Id.* at 408. Put another way, Louisiana's misrepresentation did not lighten petitioner's burden of exercising due diligence. This logic applies even more forcefully to Manning, who, according to the record, did nothing until the Office of Capital Post-Conviction Counsel was appointed on November 17, 2000, more than nineteen months after his judgment became final.

For these reasons, Manning has not shown that he diligently pursued his habeas claims. Even if his counsel's course of conduct starting on November 17, 2000 would constitute due diligence if it had begun earlier, such activity does not negate the nineteen-month-long period during which Manning did not, as far as the record reveals, focus any attention on his petition for habeas relief. Under the precedent of the Supreme Court and this circuit, it is well established that neither Mississippi's failure to appoint competent counsel nor Manning's attorneys' failure to provide meaningful representation excuses this extended period of inactivity. Accordingly, the district court abused its discretion when it held that equitable tolling was available to Manning.

**3.**

In addition to his equitable tolling argument, Manning makes three arguments for why his petition for federal relief complied with the standards set forth in 28 U.S.C. § 2244. First, he argues that the Mississippi Supreme Court accepted his petition for state postconviction relief *nunc pro tunc*, such that it was filed within one year of his conviction becoming final. *See* § 2244(d)(1)(A). Second, he argues that Mississippi created an "impediment to filing an application . . . in violation of the Constitution or laws of the United States . . . .", and that his statute of limitations did not start running until Mississippi removed that impediment by appointing competent counsel. *See* § 2244(d)(1)(B). Third, he argues that he could not have uncovered the factual predicates for

14

some of his claims until after his conviction became final, so the statute of limitations did not begin running until he could have uncovered these facts. *See* § 2244(d)(1)(D). The district court rejected Manning's arguments that § 2244(d)(1)(B) and § 2244(d)(1)(D) extended his deadline for filing a petition under AEDPA, but did not consider his argument related to § 2244(d)(1)(A). Because we conclude that invoking equitable tolling was an abuse of discretion, we consider each of Manning's statutory tolling arguments in turn.

**i.**

Manning first argues that the AEDPA statute of limitations does not bar his claim because the Mississippi Supreme Court accepted his application for state postconviction relief *nunc pro tunc*. When Manning filed his application for postconviction relief on October 8, 2001, he moved that it be filed *nunc pro tunc* on April 1, 2000, which would satisfy the AEDPA statute of limitations. The Mississippi Supreme Court entered a ruling granting state postconviction relief and vacating Manning's sentence on May 27, 2004. With respect to Manning's motion to file his application *nunc pro tunc* to April 1, 2000, the Mississippi Supreme Court wrote the following: "Petitioner's Motion to File Post-Conviction Petition Nunc Pro Tunc to Comply with the Federal Habeas Corpus Statute, granted in part and denied in part. See Opinion of this Court handed down this date." Though the opinion addresses a number of other issues, it provides no further explanation of how it was ruling on Manning's motion to file his application *nunc pro tunc*. Manning argues that the Mississippi Supreme Court's May 27, 2004 order effectively rendered his application timely for AEDPA purposes.[8]

We reject Manning's argument, as the Mississippi Supreme Court's May

---

[8] Because both the granting and the vacating of the *nunc pro tunc* order occurred well after the dates we are using for tolling purposes, we need not consider whether the granting (and later vacating) of such an order would constitute grounds for statutory or equitable tolling.

27, 2004 order was subsequently vacated.  The docket sheet for Manning's state postconviction proceedings demonstrates that the *nunc pro tunc* order was rendered in a superceded opinion.  The docket sheet shows that the Mississippi Supreme Court disposed of three motions on May 27, 2004: the petition for review of the trial court's discovery orders, the *nunc pro tunc* motion, and Manning's petition for postconviction relief.  There are three entries reading "Order Entered" for each of these motions, but two lines have been "struck through": the *nunc pro tunc* and petition for postconviction relief entries.  Under each struck-through entry, the docket sheet contains another entry reading "Opinion Rendered" for the respective motion.  From the context, it is clear that the "Opinion Rendered" was the Mississippi's Supreme Court 2006 opinion, on rehearing, adjudicating Manning's petition for postconviction relief, which did not purport to accept Manning's petition for postconviction relief *nunc pro tunc*. *See* 929 So. 2d 885.

Accordingly, the docket sheet shows that the *nunc pro tunc* motion was formally ruled on as part of the opinion adjudicating Manning's petition for state postconviction relief in 2004.  That opinion was withdrawn and replaced by the Mississippi Supreme Court's 2006 opinion that, on rehearing, dismissed Manning's petition for state postconviction relief.  The Mississippi Supreme Court's 2006 opinion was silent on the *nunc pro tunc* issue. *See id.*  As such, the Mississippi Supreme Court effectively vacated the order that Manning argues accepted his petition for postconviction relief *nunc pro tunc*, and then replaced that order with an order that did not purport to accept his petition *nunc pro tunc*.  The Mississippi Supreme Court's May 27, 2004 order therefore does not establish Manning's entitlement to statutory tolling of AEDPA's one-year statute of limitations.

### ii.

We also reject Manning's argument that his petition for postconviction

relief was timely pursuant to § 2244(d)(1)(B). This provision permits petitioners to file their application for postconviction relief one year from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the application was prevented from filing by such State action." § 2244(d)(1)(B). Manning contends, in essence, that he was prevented from filing his application before the AEDPA statute of limitations ran because Mississippi did not appoint competent counsel until more than a year after judgment became final. Manning's argument is foreclosed by the Supreme Court's decision in *Lawrence v. Florida*, 549 U.S. at 337. As the Supreme Court has not recognized a right to postconviction counsel under the United States Constitution, *see Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012), "a state's effort to assist prisoners in postconviction proceedings does not make the State accountable for a prisoner's delay."[9] *Lawrence*, 549 U.S. at 337. Here, as in *Lawrence*, Mississippi did not "prevent [Manning] from hiring his own attorney or from representing himself." *See id.* Thus, the inadequacies of the counsel appointed by Mississippi did not "preven[t]" Manning from filing his petition for postconviction relief before AEDPA's one-year statute of limitations ran.[10]

### iii.

Finally, we reject Manning's argument that his application was timely pursuant to § 2244(d)(1)(D). This provision permits petitioners to file their application for postconviction relief one year from "the date on which the factual

---

[9]     Although the quoted section of *Lawrence* was specifically addressing equitable tolling, the same reasoning applies to this provision of § 2244.

[10]     Manning also argues that some of his claims involve suppression of evidence constituting "State action" that prevented him from filing his application for postconviction relief within AEDPA's statute of limitations. But many of his claims did not involve suppression of evidence or anything similar. Thus, the fact that some of his claims involved suppression of evidence did not prevent him from filing his application within one year of his judgment becoming final.

predicate of the claim or claims presented could have been discovered through the exercise of due diligence." § 2244(d)(1)(D). The factual predicates for both of the claims for which the district court granted a COA were apparent when his judgment became final. Manning had already raised his ineffective assistance of counsel claims on direct review, and the factual predicates of his *Batson* claim were evident during his state court trial proceeding. He needed no additional time to uncover the factual predicates for these claims. Manning's argument would require us to hold that a petitioner's statute of limitations does not begin to run on any of his claims until he has discovered every conceivable claim for federal habeas corpus relief. He cites no support for this untenable theory. Section 2244(d)(1)(D) therefore does not extend Manning's statute of limitations past April 5, 2000.

### 4.

In sum, Manning did not file his petition within the statute of limitations set forth in § 2244, nor has he satisfied the criteria for equitable tolling. Accordingly, AEDPA's one-year statute of limitations bars his petition for a writ of habeas corpus. We cannot consider Manning's application for postconviction relief. Consequently, we deny Manning's motion for an expanded COA. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

### IV.

For these reasons, we DISMISS Manning's petition for a writ of habeas corpus.