# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 30, 2013

Lyle W. Cayce
Clerk

No. 11-31013

PANOS TSOLAINOS,

Petitioner - Appellant

v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY,

Respondent - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:10-CV-3387

Before OWEN, HAYNES, Circuit Judges, and LEMELLE,[*] District Judge.

PER CURIAM:[**]

Panos Tsolainos appeals the dismissal, as time-barred, of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. Because Tsolainos concedes that his petition was untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we consider only whether the district court erred in refusing equitable tolling in light of Tsolainos's allegations of gross misconduct by his counsel. We AFFIRM.

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-31013

## I.

In 2000, Tsolainos was convicted in Louisiana state court of the second-degree murder of Deborah Tsolainos and was sentenced to life in prison without possibility of parole. The First Circuit Court of Appeals of Louisiana overruled Tsolainos's assignments of error, and the Louisiana Supreme Court denied his application for a supervisory writ of review. *State v. Tsolainos*, 877 So. 2d 144 (La. 2004). The United States Supreme Court denied his petition for a writ of certiorari on February 28, 2005. *Tsolainos v. Louisiana*, 543 U.S. 1186 (2005).

On July 5, 2006, Tsolainos filed a state habeas petition, which was denied. The First Circuit Court of Appeals of Louisiana affirmed that decision, *State v. Tsolainos*, 997 So. 2d 46 (La. Ct. App. 1 Cir. 2008), and the Louisiana Supreme Court denied Tsolainos's application for a supervisory writ of review on October 9, 2009. *State v. Tsolainos*, 19 So. 3d 6 (La. 2009).

Tsolainos's federal habeas corpus petition was filed on October 8, 2010, in the United States District Court for the Eastern District of Louisiana. The district court denied Tsolainos's petition as untimely. *Tsolainos v. Cain*, No. 10-3387, 2011 WL 4810640 (E.D. La. Oct. 6, 2011). It based its decision on the recommendation of the magistrate judge, who concluded that Tsolainos had not presented facts sufficient to demonstrate entitlement to equitable tolling. *Tsolainos v. Cain*, No. 10-3387, 2011 WL 4807702, at *3–6 (E.D. La. Jun. 21, 2011). We granted a Certificate of Appealability ("COA") to determine whether the district court erred in refusing to equitably toll the AEDPA limitation period.

The facts relating to Tsolainos's argument for equitable tolling are as follows. Throughout his criminal trial and direct appeal, Tsolainos was represented by a team of attorneys, including Robert Stern and Kim Abramson ("Kim"). After the Supreme Court denied Tsolainos's petition for a writ of certiorari in February 2005, Kim notified Tsolainos that she no longer was able to work with Stern in connection with Tsolainos's applications for state and

No. 11-31013

federal post-conviction relief, but she also was not willing to work alone. Instead, she recommended that Tsolainos hire a team of partners from Phelps Dunbar LLP: Neil Abramson ("Neil," her husband) and Harry Rosenberg, the former U.S. Attorney for the Eastern District of Louisiana. Tsolainos terminated Stern in June of 2005 and later engaged Phelps Dunbar, along with Kim, to file his state and federal habeas petitions.

Although Kim was in contact with Tsolainos throughout the fall of 2005, the contract between Tsolainos and Phelps Dunbar was not executed until December 2005.[1] A Phelps Dunbar case file was first opened in February 2006. Rosenberg asserts the engagement letter stated that he and Neil were to be the partners responsible for the case. Although Rosenberg was a former United States Attorney, he did not believe that Neil had experience representing clients in criminal proceedings or in collateral review of a criminal conviction. Rosenberg's first recorded billable time on the case was in May 2006.

Tsolainos states that he was informed by Kim and Neil that his best opportunity for relief would be a federal habeas application. The attorneys were operating under the incorrect assumption that the federal statute of limitations would not commence until the conclusion of the state post-conviction proceeding because they were conflating the issue of exhaustion of state remedies with the issue of when the federal habeas "clock" begins to run. They told Tsolainos that he could not file a federal habeas application until he exhausted the state post-conviction process. Kim and Neil advised him not to worry about the

---

[1] In the fall of 2005, Hurricane Katrina struck New Orleans. Kim informed Tsolainos that the state courts had granted extensions of the statutes of limitations, thus affording him extra time to file his petition. *See, e.g., Mark v. Michael*, No. 08-1261, 2008 WL 4365929, at *2 (E.D. La. Sept. 23, 2008) ("[T]he limitations period was arguably suspended, and therefore no portion of [the limitations] period elapsed, during the period of September 1, 2005, through November 25, 2005."); *Hampton v. Wilkinson*, No. 08-1535, 2008 WL 4829716, at *2 (E.D. La. Aug. 26, 2008) (same). We credit this time to Tsolainos, but note that it does not affect our analysis.

deadline for the federal application until the state post-conviction proceedings were completed.  Tsolainos states that he "did not see any reason to needlessly delay the filing" of his state application, and instructed Kim to file the application "as soon as it was prepared."

After the conclusion of the state post-conviction proceedings in October 2009, Tsolainos asserts that Kim instructed him that his federal petition "would be ready for filing by Thanksgiving 2009, and when it was not done by Thanksgiving[,] she promised him it would be done in another month or two." Tsolainos alleges that it "was nearly impossible" to reach Kim by phone during this period and that she was not responsive to his requests to file the federal application "as soon as possible."

Tsolainos had an unrelated dispute with Kim and Neil in December 2009, and on January 25, 2010, attempted to terminate their representation and proceed only with Rosenberg.  He was informed that Rosenberg was unwilling to continue the representation without Neil and Kim.  The firm sent Tsolainos a letter asking whether he would allow all three attorneys to continue to represent him.  The letter advised Tsolainos that the "Louisiana Supreme Court denied [his] writs for relief relating to [his] post-conviction relief on October 9, 2009," and "that federal law includes a one year period relating to habeas corpus relief."  Tsolainos fired all three attorneys soon after.

Around that time, Tsolainos learned that his federal limitations period had already expired before his state application was filed.[2]  Tsolainos contacted his former attorney, Stern, to take over his representation.  Stern agreed that the federal period had lapsed, and upon receipt of Tsolainos's client file from Phelps

---

[2] Tsolainos was informed of this outcome by the attorneys who managed a trust set up to pay his legal bills.  The trust attorneys had become concerned about the legal bills from Kim and the Phelps Dunbar team and conducted separate research into the federal statute of limitations.

No. 11-31013

Dunbar, learned that no one had prepared even a draft of a federal habeas petition. Through Stern and additional counsel, Tsolainos filed the instant federal petition eight months later.

## II.

We review a district court's decision regarding equitable tolling for abuse of discretion, although any conclusions of law underlying the district court's decision are reviewed *de novo*. *Manning v. Epps*, 688 F.3d 177, 182 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 1633 (2013). The petitioner bears the burden of proving that he is entitled to equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002). A petitioner is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

## III.

AEDPA's one-year statute of limitations runs from the latest of several start dates, including the one applicable here—"the date on which the judgment became final by the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(A). Tsolainos's one-year clock began to run on February 28, 2005, when his petition for certiorari to the Supreme Court was denied. *See id.*; *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003) ("[T]he 'conclusion of direct review' is when the Supreme Court either rejects the petition for certiorari or rules on its merits." (citation omitted)). His statutory period for filing his habeas petition thus expired one year from that date, February 28, 2006, unless that deadline was extended by tolling.[3]

---

[3] AEDPA provides that the "time during which a properly filed application for State post-conviction . . . review . . . is pending shall not be counted" against that one-year period. 28 U.S.C. § 2244(d)(2). Louisiana law, in contrast, provides an incarcerated person two years

No. 11-31013

Tsolainos's federal habeas petition was not filed until October 8, 2010. All parties agree that Tsolainos's petition was untimely due to the misunderstanding of his counsel regarding the correct application of AEDPA's limitations period. Kim and Neil (but not Stern[4]) erroneously believed that the one-year period ran from the time that Tsolainos's application for state habeas relief was terminated. Accordingly, they did not realize that they had missed the filing date until four years after it had passed. Tsolainos argues that the failures of his counsel constitute the type of "extraordinary circumstances" rising above simple negligence contemplated by the Supreme Court in *Holland v. Florida*, and that he should therefore be permitted to submit his habeas petition now.

However, *Holland* did not hold that attorney misconduct alone could justify equitable tolling. *See Holland*, 130 S. Ct. at 2565. Rather, *Holland* illustrates that a prisoner must diligently pursue his rights in the face of extraordinary circumstances. The defendant in *Holland* filed a *pro se* federal habeas petition after the AEDPA deadline had passed, alleging that during the two years while his state habeas petition was pending before the Florida Supreme Court, his attorney communicated with him only three times, each time by letter. *Id.* at 2555. Holland's attorney never met with him or updated him on the status of his case, despite Holland's multiple attempts to contact his

---

within which to file a petition for post-conviction relief. *See* LA. CODE CRIM. PROC. ART. 930.8(A) (West 2012). If a petitioner files a petition for post-conviction relief in state court before the expiration of the one-year limitations period, the federal clock stops running until the state post-conviction action is concluded. But the one-year clock does not reset; rather, it resumes from where it left off. *See* § 2244(d)(2). Because Tsolainos's state habeas petition was not filed within the one-year period, it did not statutorily toll the limitation clock. *See, e.g., Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

[4] Tsolainos has never argued that Stern's representation was incompetent, such that he should be entitled to equitable tolling for any portion of the time during which he employed Stern. It is unclear what Rosenberg thought regarding the statute of limitations. Rosenberg stated that he was not consulted on or before May 2006 "on the question of when the state [application] for post-conviction relief needed to be filed in order to ensure that the federal habeas [application] would not be time barred."

No. 11-31013

attorney regarding the importance of timely filing his federal habeas petition. *Id.* at 2555–56. Holland repeatedly contacted the state courts and the bar association to have his counsel removed from his case. *Id.* Once Holland learned—in the prison library, not from his attorney—that the Florida Supreme Court had already decided his case and the federal filing deadline had passed, he immediately filed his own petition. *Id.* at 2557. Accordingly, the Supreme Court concluded that Holland's attentive efforts under the circumstances satisfied the "reasonable diligence" requirement for equitable tolling purposes. *Id.* at 2565. Thus, equitable tolling "is not intended for those who sleep on their rights." *See Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010) (internal quotation marks and citation omitted).

Tsolainos must establish both extraordinary circumstances and diligence.[5] With respect to "extraordinary circumstances," he argues that the representation by incompetent counsel satisfies this prong.[6] Even assuming that being

---

[5] We "invoke equitable tolling only when *petitioners* demonstrate that they have acted with due diligence." *Manning*, 688 F.3d at 184 (emphasis added). Thus, it is Tsolainos's burden to prove diligence.

Tsolainos argues that the State concedes Tsolainos's diligence, or that it waived the argument by failing to raise it in the district court. We disagree. The State did not "intentional[ly] relinquish[] or abandon[] a known right." *Wood v. Milyard*, 132 S. Ct. 1826, 1835 (2012) (internal quotation marks and citation omitted). Importantly, Tsolainos was the party with the burden of proof, therefore he had the duty to prove both "extraordinary circumstances" *and* diligence. *See Alexander*, 294 F.3d at 629. The issue of diligence is not an affirmative defense the State needed to raise. Accordingly, the State did not waive it.

[6] Tsolainos relies on the aspects of *Holland* that suggest that attorney misconduct can constitute extraordinary circumstances. In *Holland*, the attorney missed the filing date and "appear[ed] to have been unaware of the date on which the limitations period expired." 130 S. Ct. at 2564. The Court noted that the attorney's failure to perform adequate legal research, to communicate with his client about crucial facts such as a relevant Florida Supreme Court decision (which triggered AEDPA's limitations period in those circumstances), and to interact at all with his client over the course of years, were actions that a group of legal ethics teachers believed "violated fundamental canons of professional responsibility." *Id.* at 2564–65.

represented by incompetent counsel constitutes "extraordinary circumstances,"[7] the time period covered by this representation still leaves over a year unaccounted for.  Starting with the February 2005 date, Tsolainos was represented by Stern until at least June of 2005 and maybe as late as August of that year, approximately four months (or more).[8]  He does not contend Stern was incompetent or unaware of the correct method for calculating the federal habeas limitations date.  Indeed, Stern, who was state trial counsel, filed the habeas application in federal district court and the notice of appeal in our court, appeared on the briefing in both courts, and attended the oral argument before this panel.  Tsolainos fired Kim, Neil, and Rosenberg at the end of January 2010,[9] but he did not file his federal habeas petition until October, a period of more than eight months.  Combining this time, there is a period of at least a year

---

[7] However, because we conclude Tsolainos was not diligent, we expressly decline to decide whether Tsolainos's attorneys' alleged gross negligence and failure to conduct legal research qualifies as an "extraordinary circumstance" that "prevented" timely filing.  *See Palacios v. Stephens*, 723 F.3d 600, 608 n.6 (5th Cir. 2013); *see also Koumjian v. Thaler*, 484 F. App'x 966, 969 (5th Cir. 2012) (unpublished) (petitioner not diligent when, "even if we were to subtract the time" of the alleged extraordinary circumstances, petitioner's delay "would still exceed four and a half months"); *Manning*, 688 F.3d at 184–90 ("assum[ing] without deciding" that the "extraordinary circumstance" prong is satisfied, but  finding lack of diligence based on an "extended period of inactivity" where petitioner "neither encouraged his [] attorneys to file his application for postconviction relief nor inquired about the status of his application" for more than nineteen months); *Husley v. Thaler*, 421 F. App'x 386, 390–91 (5th Cir. 2011) (unpublished) (finding petitioner not diligent); *Wickware v. Thaler*, 404 F. App'x 856, 861–62 (5th Cir. 2010) (unpublished) (finding petitioner not diligent where there was over fourteen months of delay in filing his state application in the first instance and in filing his federal application after exhaustion).

[8]  Tsolainos's affidavit is unclear about the timing of Stern's initial firing.  Kim's affidavit stated: "Until the summer of 2005, Robert Stern and I continued to represent Mr. Tsolainos. . . .  Mr. Stern transferred his file to Phelps, Dunbar in August 2005."  Any confusion about these dates cannot benefit Tsolainos, as he was the party with the burden of proof.

[9]  Kim's affidavit indicates that she was fired on January 25, 2010; Tsolainos's affidavit indicates a similar date as the date he terminated Kim and Neil, the allegedly incompetent attorneys.  Phelps Dunbar stated that same month that it refused to represent Tsolainos without their participation.

when Tsolainos was not subject to the alleged "extraordinary circumstance" of being represented solely by incompetent counsel.

In addition to the lack of "extraordinary circumstances" for at least a year, Tsolainos also failed to demonstrate sufficient diligence.  Tsolainos's arguments track those in *Holland,* in that he maintains that he demonstrated diligence by "requesting that his petitions be filed in a timely manner and as soon as practicable" and by "constantly contacting his attorneys to ensure that the proper procedures were being followed."  Alternatively, he argues that his obligation to be diligent did not commence until he discovered that his federal application was untimely.  Tsolainos asserts that he filed his federal petition shortly thereafter, and therefore "[n]o more diligence could be expected . . . under the circumstances."

Of the many considerations bearing upon the reasonable diligence analysis, we point out three important factors: (1) Tsolainos waited nine and a half months after the denial of his Supreme Court writ of certiorari to formally retain post-conviction counsel; (2) after retaining Kim, Neil, and Rosenberg, Tsolainos did not closely monitor his attorneys or oversee the preparation of his petition; and (3) after realizing his federal petition was overdue and firing the Phelps Dunbar team, Tsolainos waited over eight months to file his habeas petition in federal court with new counsel.

While there is no bright-line rule suggesting that prisoners must retain habeas counsel within a certain period of time, *see Palacios*, 723 F.3d at 606, we consider this factor in light of *Holland*'s instructions to adhere to an equitable, "flexibl[e]," "case-by-case" approach that draws "upon decisions made in other similar cases for guidance."  130 S. Ct. at 2563.  We have held that state prisoners who were aware that their state post-conviction proceedings were no longer pending and waited to file federal habeas petitions between four and six months after the AEDPA limitation period began to run did not exercise

reasonable diligence. *See Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001); *Koumjian,* 484 F. App'x at 969–70. Tsolainos cannot claim diligence in his reliance on attorneys for a period of time during which he had no reason to believe he was actively represented by counsel. *Cf. Maples v. Thomas*, 132 S. Ct. 912, 924 (2012) ("Unknown to Maples, not one of [his] lawyers was in fact serving as his attorney during the [relevant period]."). Tsolainos did not formally engage Phelps Dunbar to file his state and federal petitions until December 2006, nine and a half months after the denial of his writ for certiorari in the Supreme Court. He also failed to prove that he was relying on Kim alone (who clearly indicated to him that she would not act alone) for federal habeas representation during this period, as well as the date on which he expressly discharged Stern, whom he does not contend was incompetent, as counsel. Failing to retain habeas counsel while Tsolainos's AEDPA clock was ticking does not exemplify "reasonable diligence."

Finally, Tsolainos offers no justification for the unreasonable delay in filing his federal habeas petition after discovering the Phelps Dunbar team's mistake regarding AEDPA's statutory period. Indeed, after Tsolainos fired Kim and the Phelps Dunbar attorneys in January of 2005, he did not file his federal habeas petition through new counsel for more than eight months. Presumably his new, adequate counsel was aware of the correct limitations period; he makes no contrary claim. Once Tsolainos was made aware of the deficient representation and the overdue habeas petition, he and his new attorneys failed to file expeditiously. *Compare Holland*, 130 S. Ct. at 2565 ("[T]he *very day* that Holland discovered that his AEDPA clock had expired due to [his attorney's] failings, Holland prepared his own habeas petition *pro se* and promptly filed it with the District Court."), *with Arita v. Cain*, 500 F. App'x 352, 354 (5th Cir. 2012) (unpublished) ("[U]nlike Holland, who filed a *pro se* habeas petition the '*very day*' he 'discovered his AEDPA clock had expired,' Arita retained new

No. 11-31013

counsel . . . then waited more than a month to file in state court." (citation omitted)).  This lack of diligence alone is determinative.[10]  Taken together, his unreasonable delay in retaining habeas counsel in the first instance combined with his new counsel's failure to promptly file his petition, spans over seventeen months, which easily exceeds the AEDPA one-year statutory period.  Even if it did not, his delay between firing incompetent counsel, re-hiring former counsel, and filing his federal habeas does not represent "diligence."

We conclude that the district court did not err in denying relief to Tsolainos based upon ineligibility for equitable tolling under AEDPA.  *See Holland,* 130 S. Ct. at 2562.  Accordingly, his petition was filed well outside the statutory period, and thus is untimely.

IV.

For the foregoing reasons, we AFFIRM the judgment of the district court, dismissing Tsolainos's habeas petition with prejudice as untimely under AEDPA.

---

[10]   Because of the lack of expeditious filing, we need not decide what would have happened if Tsolainos had filed promptly upon discovering the correct deadline.

11