# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-70013

THOMAS BARTLETT WHITAKER,

Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

April 4, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas

Before GRAVES, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Petitioner-Appellant Thomas Bartlett Whitaker appeals the district court's grant of summary judgment on his federal habeas claims. *Whitaker v. Stephens*, 2015 WL 1282182 (S.D. Tex. 2015). Based on our review of the briefs, the applicable law, oral argument before us, and the full record, we AFFIRM the judgment of the district court denying relief on Whitaker's due process claim for the reasons stated in its forty-nine page opinion entered on March 20, 2015. We deny Whitaker's request for a certificate of appealability alleging ineffective assistance of counsel because he fails to show the district court's resolution of that claim against him is debatable among reasoned jurists. 28

No. 16-70013

U.S.C. § 2253(c). And we write separately to elaborate analysis of the prosecutorial misconduct issue for which the district court granted Whitaker a certificate of appealability ("COA").

As the district court noted, there is no dispute about the facts of Whitaker's crime, which the Texas Court of Criminal Appeals ("TCCA") summarized as follows:

> The evidence shows that [Mr. Whitaker] led his family to believe that he was enrolled in college and was about to graduate. None of this was true. On December 10, 2003, [Mr. Whitaker] and his father, mother and younger brother went out to dinner to celebrate [Mr.Whitaker]'s "graduation." When they arrived home, [Mr. Whitaker]'s roommate ([Christopher] Brashear) was inside, and he shot and killed [Mr. Whitaker]'s mother and brother and wounded [Mr. Whitaker]'s father as they entered the home. [Mr. Whitaker] knew that Brashear was waiting inside the home intending to murder [Mr. Whitaker]'s entire family. He knew that another individual ([Steven] Champagne) was waiting outside in a getaway car. Since at least 2000, [Mr. Whitaker] had planned with several other individuals, at different times, to murder his family. He made at least one unsuccessful attempt to murder his family prior to December 10, 2003. His motive was money.
>
> In June 2004, as the police investigation focused on [Mr. Whitaker], [Mr. Whitaker] stole $10,000 from his father and fled to Mexico where he was apprehended about 15 months later.
> …
> At the punishment phase, [Mr. Whitaker]'s mitigation case was, among other things, that [Mr. Whitaker] was sorry and that neither his father nor members of his mother's side of the family wanted him to be sentenced to death and that these family members had to bear the ordeal of a trial because the State would not accept [Mr. Whitaker]'s offer to plead guilty in exchange for ... two consecutive life sentences. Emphasizing that the State did not seek the death penalty against the shooter (Brashear), the defense also seemed to suggest that the prosecution unfairly sought the death penalty against [Mr. Whitaker] over issues related to [a] proffer [of guilt made during plea negotiations].

2

No. 16-70013

*Whitaker v. Stephens*, 2015 WL 1282182, *1 (quoting *Whitaker v. State*, 286 S.W.3d 355, 357-58 (Tex. Crim. App. 2009) (footnotes omitted)).

A Texas jury convicted Whitaker of capital murder on March 5, 2007, and he was sentenced to death. The TCCA affirmed on direct appeal. *Whitaker v. State*, 286 S.W.3d 355. Subsequently, the state trial court and the TCCA denied state habeas claims. *See Ex parte Whitaker*, No. WR-73421-01, 2010 WL 2617806 (Tex Crim. App. June 30, 2010). Whitaker then filed his original federal habeas petition, which he amended once, on October 14, 2011. As noted, the district court granted summary judgment in favor of Respondent-Appellee Lorie Davis, denying Whitaker a COA on all claims except for his claim of prosecutorial misconduct.

Whitaker's assertion of prosecutorial misconduct relates to references at trial and during Whitaker's penalty phase to a plea discussion proffer. The question is whether the TCCA decision denying relief on this ground was contrary to, or an unreasonable application of, clearly established federal law under 28 U.S.C. § 2254(d)(1).

## I.     Relevant Background

## A.     The Plea Discussion Proffer

Taking the facts as asserted by Whitaker in his federal habeas filing, the district court summarized the background and trial use of the plea discussion proffer as follows:

> According to Mr. Whitaker, plea negotiations began when Mr. Whitaker's original trial attorneys, Dan Cogdell and James Ardoin, ran into Mr. Felcman at a local store. According to Mr. Cogdell and Mr. Ardoin, Mr. Felcman stated that he would consider not seeking the death penalty if Mr. Whitaker gave a written statement limited to the facts of the case, with no expressions of remorse or contrition. See Cogdell Affidavit, Amended Petition ("Am.Pet."), Exh. A at 2; Ardoin Affidavit, Am. Pet., Exh. B at 2. Mr. Ardoin drafted a proffer and presented it to Mr. Felcman. According to Mr. Ardoin, Mr. Felcman then rejected

3

No. 16-70013

the proffer because it did not contain any expressions of remorse. Ardoin Affidavit, Am. Pet., Exh. B at 2.

…

The proffer was discussed in front of the jury at least three times during the course of Mr. Whitaker's trial. First, Mr. Whitaker contends that Mr. Felcman baited his father, Kent Whitaker ("K.Whitaker"), into mentioning the proffer during the guilt-innocence phase by asking him to confirm that Mr. Whitaker never confessed to the murders. 25 Tr. at 104–05. When Mr. K. Whitaker brought up the proffer in his answer, Mr. Felcman proceeded to characterize the proffer as "legal maneuvering on your son's part" that did not express "repentance." Id. at 104–06.

Second, Mr. Felcman used the proffer to cross-examine Mr. Whitaker during the penalty phase. After Mr. Felcman handed the proffer to Mr. Whitaker and asked him if it was true, the following exchange took place:

A. I did not write that.

Q: You didn't write it?

A. No. I—I wanted to write the proffer. That was some confusion between me and Mr. Cogdell at the time when initially— I guess it was your office that suggested that if we wrote the proffer, we could all end this. It was my impression that I would write this admission of guilt.

Q. It wasn't my suggestion.

A. I'm sorry.

Q. Your father poured his heart out to me, and I saw no remorse on your part.

A. I didn't actually write that. The one that I wrote was in my cell, and it did have remorse. It was really how I felt at the time, and I didn't—I was under the impression that I was going to be giving that copy to Mr. Cogdell, and then I find out—I guess I didn't see him for a few weeks. I found out the next time that I talked to him that a proffer had been rejected. I was very confused, because it was my understanding that I would be writing it myself.

Q. The proffer that presented—that you didn't even have anything to do with. You understand how insulting that is to somebody that has to listen to the father plea, and I see no remorse on the Defendant?

A. Yes, extremely insulting. I knew it would be, if it had been done that way. I wouldn't have agreed to that at all. I was very upset about that.  31 T.R. at 257–58.

4

No. 16-70013

Third, Mr. Felcman's second chair, Mr. Strange, invoked the proffer during the State's closing in the penalty phase. Mr. Strange argued to the jury that Mr. Whitaker's actions throughout the case and trial—including the proffer—were "manipulation" and "gamemanship." 32 T.R. at 31–32.

*Whitaker v. Stephens*, 2015 WL 1282182, *3-6.

## B.     District Court Assessment of the Proffer

The district court correctly set forth disputed issues of fact relating to the plea discussion process and then confirmed it would consider Whitaker's federal habeas argument "in light of the facts alleged in [Whitaker's pretrial defense counsel] Mr. Cogdell's and Mr. Ardoin's affidavits." *Id.* *5. The district court understood Whitaker's argument that the TCCA's denial of habeas relief violated federal law as determined by Supreme Court law to include *Santobello v. New York*, 404 U.S. 257 (1971), *Town of Newton v. Rumery*, 480 U.S. 386 (1987), and *United States v. Mezzanatto*, 513 U.S. 196 (1995). The district court noted "critical distinctions" with *Santobello*, notably that "[b]ecause Mr. Felcman's offer did not induce Mr. Whitaker to plead guilty, *Santobello* provides no basis for habeas relief." *Id.* at *6-7. The district court continued its analysis by observing that

> *Town of Newton v. Rumery* concerns the propriety of prosecutor-instigated 'release-dismissal agreements'—an issue not present in or invoked by Mr. Whitaker's case. See 480 U.S. 386 (1987). [Finally,] *United States v. Mezzanatto* resolves that the protections of Federal Rule of Evidence 410 are waivable, see 513 U.S. 196 (1995), but sheds no light on the constitutional implications of prosecutorial use of evidence covered by the rule in the absence of waiver.

*Id.* at 7 (footnote omitted).

## II.     AEDPA, Standard of Review, and Procedural Default

Under the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), federal habeas relief based upon claims that were adjudicated on the merits by

5

the state courts, as here, cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

We review de novo a district court's ruling granting summary judgment denying a state petitioner's request for habeas relief. *See Goodrum v. Quarterman*, 547 F.3d 249, 255 (5th Cir. 2008).

Texas makes the threshold argument that because the TCCA on direct appeal held that Whitaker had procedurally defaulted his prosecutorial misconduct claim by failing to object when the proffer came up, federal habeas review is barred altogether. Procedural default, however, is inapplicable because Texas did not argue in the district court that Whitaker's due process claim was defaulted. *See United States v. Drobny*, 955 F.2d 990, 995 (5th Cir. 1992) ("To invoke the procedural bar…the government must raise it in the district court."); *Randall v. Collins*, 5 F.3d 1494, *1 n.1 (5th Cir. 1993).

## III.  Analysis

We affirm the district court's analysis and holding, summarized above, that the TCCA's resolution of Whitaker's allegation of prosecutorial misconduct was not contrary to, or an unreasonable application of, clearly established federal law.

At trial, the plea discussion proffer came up once briefly during Whitaker's father's testimony. No objection was made. The proffer was not read to the jury nor introduced into evidence, and the government drew no attention to it in closing or rebuttal closing arguments. Defense counsel highlighted that Whitaker did not forcefully contest guilt at trial, stating to the jury in closing: "No one, no one has come in here and told you Bart Whitaker is not guilty. We didn't even plead not guilty…. You listened to all

## No. 16-70013

those facts last week. I listened to all those facts last week. Factually, factually, he's guilty." Indeed, the district court confirmed the "overwhelming" proof of guilt. *Whitaker v. Stephens*, 2015 WL 1282182, *8 n.8. We hold that any improper passing reference at trial to the proffer (or omissions in it) was harmless. No clearly established federal law suggests otherwise.

By contrast, Whitaker's guilty plea overtures featured prominently during the penalty phase. Defense counsel highlighted that Whitaker repeatedly had tried to communicate his desire to plead guilty even to multiple life sentences. Neither government witness testified about the pretrial proffer. Consistent with Whitaker's mitigation opening, however, each of the three defense witnesses—the defendant's uncle, the defendant's father, and then the defendant himself—testified forcefully that pretrial guilty plea overtures and offers were made to the prosecution. Whitaker himself began his direct testimony by stating to the jury he was unsurprised to have been "convicted of capital murder" because he had instructed defense counsel throughout to confer with the prosecution to plead guilty to "[a]s many life sentences as they wanted." His counsel then finished direct examination with two admonitions to Whitaker, anticipating cross-examination: "Q. You know [the prosecutor] is going to come up here and talk about all the ways that you've manipulated people or told lies and all that stuff. You've admitted that?" "A. Yes sir."

Texas then did seek to elicit that Whitaker's guilty plea overtures were insincere and that his motivation was never remorse, with one example being the pretrial proffer. Whitaker rejected the negative characterization of him as remorseless, both in his direct examination, and in answer to cross-examination, but, nonetheless, drawing inference from the entirety of Whitaker's familicide, and subsequent actions, including his Christmas card to the prosecutor, Texas urged in closing argument that the jury perceive "manipulation" and "gamesmanship."

No. 16-70013

Preliminarily, we agree with the district court that the competing inferences drawn at the punishment phase from Whitaker's pretrial guilty plea overtures, including the defense proffer—Whitaker suggesting favorably that he sought to acknowledge guilt; Texas, perceiving instead manipulation—are not inconsistent with Texas Rule of Evidence 401, which, like its federal counterpart, contemplates admission of plea bargaining statements when, in fairness, other statements made during the same discussions are admitted. After the defense opening emphasized that Whitaker repeatedly had sought to plead guilty, the jury then heard corroborating testimony of the victim father, the uncle, and then Whitaker himself, all concertedly insisting that Whitaker had made guilty plea overtures to the prosecution from the start. *Cf. Whitaker v. State*, 286 S.W.3d 355, 362 ("Appellant's complaint about the testimony referring to the proffer and to the plea negotiations is difficult to understand since it appears that this information formed a significant part of his mitigation case.").

Nevertheless, Whitaker contends that impeachment of him using the proffer was misconduct and contrary to "principles" from *Santobello* and equivalent to an involuntary confession because the prosecutor's direction to leave out remorse came with the implied promise not then to use lack of remorse against him. On appeal, Whitaker continues to argue that *Santobello* applies, especially as cited in *United States v. Ross*, 493 F.2d 771, 775 (5th Cir. 1974). He also now relies on the due process line of authority announced in *Giglio v. United States*, 405 U.S. 170 (1972), and *Napue v. Illinois*, 360 U.S. 264 (1959). And third, he cites *New Jersey v. Portash*, 440 U.S. 450 (1979), and *Mincey v. Arizona*, 437 U.S. 385 (1978), for the proposition that references to the proffer equated to use of an involuntary confession. Whitaker's overarching due process argument is less that impeachment occurred of his guilty plea overtures, and more that impeachment using the proffer was

8

improper because it was premised on sentiment he contends his attorneys were told to remove.

*Santobello*'s due process rule that a guilty plea requires fulfillment of terms agreed to by the government is inapposite because Whitaker did not plead guilty. Notably, also, our reference to *Santobello* in *Ross* was simply to the important observation that "plea bargaining is an essential component of justice and, properly administered, it is to be encouraged…." *Ross*, 493 F.2d at 775. Regardless, even if our decisions could be the source of clearly established federal law for AEDPA purposes, *contra Renico v. Lett*, 559 U.S. 766, 778-779 (2010), *Ross* was a straightforward prohibition against the direct introduction of plea bargaining discussions, and did not address the situation here involving the prosecution's use of such discussions after the defense presented them.

The Supreme Court due process decision in *Giglio*—or as further condemned in *Napue*, when withheld evidence is compounded by trial proof elicited that would be contradicted by that evidence—also is distinguishable because no evidence was kept from Whitaker. Defense counsel engaged in plea discussions, sending the proffer in question to the prosecution with the scope delimitation they allege they were given, i.e. crime facts only, no sentiment about remorse. The suppression or withholding of evidence determinative for *Giglio* and *Napue* claims did not occur, therefore.

Finally, Whitaker contends that denial of habeas relief is inconsistent with the Supreme Court's due process prohibition against use of a defendant's involuntary confession, as stated in *New Jersey v. Portash, supra*, and *Mincey v. Arizona, supra*. Whitaker's proffer is distinct from these cases, however, because his attorneys initiated the plea discussion and gave the proffer to the prosecution voluntarily, hoping to have life imprisonment considered instead of the death penalty. There is no suggestion the proffer was submitted involuntarily, by government threat or coercion. In fact, the district court

noted the record consistency, including the defense counsel affidavits, that Whitaker "made a proffer of evidence in exchange for the prosecutor's promise to *consider* not seeking the death penalty," and that finding is not clearly erroneous. Whitaker offers no caselaw that extends *New Jersey v. Portash* and *Mincey v. Arizona* involuntary confession caselaw to apply to his allegation here, where a defendant initiates a plea overture, then defense counsel submit a proffer conforming to a scope delimitation, and upon cross-examination about omitted remorse, the defendant has full "opportunity to testify on his own behalf and explain that he did not personally write or approve the proffer, and to express his own feelings about his crime." *Whitaker v. Stephens*, 2015 WL 1282182, *8 n.8. Any misleading impression intimated by Texas's cross-examination taking the proffer out of the context of its alleged terms did not circumscribe Whitaker's right to answer as he did, with supporting testimony from his father and uncle, to develop the mitigation argument that he repeatedly made overtures acknowledging his guilt.

## Conclusion

Because Whitaker identifies no pertinent authority showing the TCCA's resolution of his allegation of misconduct was contrary to, or an unreasonable application of, clearly established federal law, and for the reasons stated by the district court, we AFFIRM the judgment of the district court denying relief on his due process claim. We also deny Whitaker's request for a certificate of appealability as to his allegation of ineffective assistance of counsel for the reasons stated by the district court, which Whitaker fails to show are debatable among reasoned jurists.