# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-70003

QUINTIN PHILLIPPE JONES,

United States Court of Appeals
Fifth Circuit

**FILED**

April 15, 2019

Lyle W. Cayce
Clerk

Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, DENNIS, and ELROD, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Quintin Phillippe Jones was sentenced to death by a Texas court. He now appeals the district court's denial of his federal application for post-conviction relief, arguing that evidence was erroneously admitted at sentencing in violation of his Fifth Amendment rights and that the district court improperly denied him further investigative funding. We granted a certificate of appealability, and now affirm the district court's judgment and denial of funding.

No. 16-70003

**I**

Jones beat his eighty-three-year-old great aunt, Berthena Bryant, to death with a baseball bat after she refused to continue lending him money.[1] Fort Worth police arrested him the next day for outstanding traffic warrants and possession of a controlled substance. They interviewed him twice about Bryant's murder.[2] The first time, Jones denied involvement. The second time, he waived his *Miranda* rights and confessed to the murder—explaining that he had an alter ego named James who lived in his head and who was responsible for killing Bryant.[3]

Based on a lead from Jones's sister, the police also investigated Jones's involvement in the murders of Marc Sanders and Clark Peoples.[4] Nine days after Jones confessed to killing Bryant, a Texas Ranger and sheriff's deputy interrogated Jones about the Sanders and Peoples murders.[5] Jones told them that he murdered Sanders and Peoples with his close friend Ricky "Red" Roosa. He described how Roosa was the primary decision-maker and directed Jones to take steps like restraining the victims and disposing of their bodies.[6] Authorities only informed Jones of his *Miranda* rights after this statement was written down and he was about to sign; he proceeded to sign it.[7] While Jones was only tried for Bryant's murder and this written statement was not introduced at the guilt phase of his trial, it was introduced in the punishment phase.

---

[1] *Jones v. State*, 119 S.W.3d 766, 770–71 (Tex. Crim. App. 2003).
[2] *Id.* at 771.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.* at 781, 792–94.
[7] *Id.* at 772.

2

No. 16-70003

A Texas jury convicted Jones of capital murder. At the punishment phase of his trial, the jury was asked to answer Texas's two special issues: "1) would appellant probably commit future criminal acts of violence that would constitute a continuing threat to society; and 2) whether, taking into consideration all of the evidence, there are sufficient mitigating circumstances to warrant a life sentence rather than a death sentence."[8]  Based on the jury's findings that Jones was likely to commit future acts of violence and that there were insufficient mitigating circumstances to warrant a life sentence, the trial court sentenced Jones to death.[9] The Texas Court of Criminal Appeals, or CCA, affirmed his conviction and sentence,[10] and the United States Supreme Court denied certiorari.[11]

Jones's appointed post-conviction attorney failed to file his state application for habeas corpus. The CCA appointed Jack Strickland as substitute counsel and set a new deadline for Jones's application. Although Strickland filed Jones's application thirty days after the extended deadline had passed, the CCA found that Strickland's workload constituted good cause for the delay and accepted Jones's petition. Throughout the state habeas proceedings, Strickland failed to respond to letters Jones sent urging him to investigate or discuss certain issues; Jones wanted Strickland to raise ineffective assistance of counsel, while Strickland saw this as "casually impugn[ing] the "integrity [and] competence" of Jones's previous attorneys. Jones twice wrote to the state court asking it to contact Strickland and "have

---

[8] *Id.* at 777.
[9] *Id.* at 770.
[10] *Id.*
[11] *Jones v. Texas*, 542 U.S. 905 (2004).

No. 16-70003

him . . . do his job." The CCA did not intervene in Strickland's representation of Jones and ultimately denied Jones's habeas application in 2005.[12]

Despite Jones's persistent efforts to have substitute or additional counsel appointed for his federal postconviction proceedings, the district court appointed Strickland in an order that also directed Jones to "timely file his federal petition for writ of habeas corpus" and required "[t]he petition [to] demonstrate that it is timely filed under 28 U.S.C. § 2244(d)(1)." Jones continued to send Strickland letters about the federal petition and upcoming deadline, which Strickland told Jones was September 14, 2006.

Strickland filed Jones's federal petition on September 14, 2006, exactly. The district court dismissed the petition as time-barred because Strickland had miscalculated the filing deadline. While Strickland thought the deadline fell one year after the state court's denial of Jones's habeas petition, the correct deadline was one year after the denial of Jones's petition for certiorari on direct appeal, with tolling for the pendency of the state habeas proceedings: April 18, 2006.[13] And, although the federal filing deadline was tolled while Jones's state habeas petition was under consideration, it was not tolled for the 149-day period between when the Supreme Court denied certiorari on direct appeal and Strickland filed Jones's state petition. Jones's federal petition was precisely 149 days late.[14]

---

[12] *Ex parte Jones*, No. WR-57,299-01, 2005 WL 2220030, at *1 (Tex. Crim. App. Sept. 14, 2005) (per curiam).

[13] *See* 28 U.S.C. § 2244(d).

[14] As the district court explained, this was not an inexplicable error. Typically, the deadline to file a post-conviction petition in Texas state court passes *before* the case is finalized on direct appeal. Where a petitioner files a state habeas application before the judgment is finalized on direct review, the one-year federal limitations period is instantly tolled when the direct appeal terminates, and only resumes when the state habeas proceedings are finalized. Here, in contrast, the deadline for Jones's state habeas petition was tolled because Strickland received an extension allowing Jones to file the state petition *after* the Supreme Court denied certiorari.

No. 16-70003

After Strickland did not contest the dismissal of the petition before the district court or on appeal,[15] the district court appointed new counsel and vacated its dismissal to give Jones a chance to respond. Jones responded, and the district court once again dismissed his petition as time-barred. He appealed, and we vacated and remanded for reconsideration in light of the principles of equitable tolling announced in the Supreme Court's then-recent decision in *Holland v. Florida*.[16] On remand, the district court initially found that no grounds existed for equitable tolling, then was persuaded to reverse course after Jones moved for reconsideration.

Jones filed an amended petition adding claims for relief, and sought additional funding for investigative services. The district court denied Jones's investigative funding request, then denied each of Jones's six claims for relief. It denied Jones a certificate of appealability on all claims. We granted Jones a certificate of appealability on his claim that the trial court violated his Fifth Amendment rights by admitting an unmirandized confession at the punishment phase,[17] and instructed Jones to simultaneously brief his appeal from the district court's denial of investigative funding.[18]

We must now resolve three issues: whether Jones's petition is time-barred, whether Jones is entitled to relief on his Fifth Amendment claim, and whether Jones is entitled to investigative funding.

---

[15] Strickland informed Jones that he was investigating options, but did not notice an appeal in this court or tell Jones that he was not filing an appeal.

[16] *Jones v. Thaler*, 383 F. App'x 380, 380 (5th Cir. 2010) (per curiam) (remanding in light of *Holland*, 560 U.S. 631 (2010)).

[17] *Jones v. Davis*, 673 F. App'x 369, 376 (5th Cir. 2016) (per curiam). The Supreme Court denied certiorari on the claim for which we declined to grant Jones a COA. *Jones v. Davis*, 137 S. Ct. 2188 (2017).

[18] A COA is not needed to appeal this issue, so when we granted Jones a COA on the *Miranda* issue, we instructed him to brief his § 3599 argument at the same time. *Jones*, 673 F. App'x at 376.

5

No. 16-70003

## II

AEDPA prescribes a one-year statute of limitations for a person in state custody to bring a federal habeas claim, tolled while the state habeas petition is pending.[19] Accounting for the period between denial of Jones's petition for certiorari on direct appeal and Jones's filing of his state habeas petition, Jones's federal application was 149 days late—absent the equitable tolling applied by the district court.

The Director argues that Jones's entire petition is time-barred and that the district court improperly applied equitable tolling. Jones argues that the Director waived this argument before the district court, and that in any event, the district court did not err in tolling the deadline for his petition.

### A

In granting the certificate of appealability, we observed that the Director may have waived her limitations defense, but that we would not decide the issue without further review of the record.[20] We now conclude that she did not. After we remanded the case for the district court to consider equitable tolling in light of *Holland*, both parties briefed the issue further, with the Director arguing that *Holland* did not affect the district court's decision to deny equitable tolling. The Director extensively argued that Jones was not entitled to equitable tolling under *Holland* because he had failed to exercise diligence and Strickland's error in calculating the deadline was not an extraordinary circumstance. Following this briefing, the district court once again dismissed Jones's petition as time-barred.

Jones then filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). There, he raised for the first time the argument

---

[19] 28 U.S.C. § 2244(d).
[20] *Jones*, 673 F. App'x at 376.

6

that Jones detrimentally relied on the district court's order appointing Strickland as counsel and directing Jones—and, by extension, Strickland—to timely file his petition and affirmatively demonstrate its timeliness. The Director's response did not directly address this issue, instead arguing that Jones had more generally not met the requirements for relief under Rule 59(e). The district court ordered the Director to submit additional briefing specifically addressing Jones's argument that he was entitled to rely on the district court's order appointing counsel, and the Director did so, making much the same arguments that she has on this appeal. This time, the district court granted Jones's request for equitable tolling.

Jones filed an amended habeas petition. In response, the Director fully briefed the limitations defense regarding Jones's *new* claims. But the Director did not specifically argue or brief the limitations defense regarding Jones's *original* claims. Instead, in a footnote, she stated:

> It is still the Director's contention that the claims raised in this original petition (claims 1 and 5 above) are barred under AEDPA's statute of limitations. Because this issue has already been thoroughly litigated in this Court, however, the Director will not reiterate this argument. In the interests of brevity, the Director will address only the application of the statute of limitations to Jones's new claims (claims 2-4 above).

Jones contends that the Director's failure to fully brief the statute of limitations issue in response to claims 1 and 5 of Jones's amended petition—including the *Miranda* claim on which we granted a COA—resulted in waiver. He correctly points out that ordinarily, an affirmative defense not set forth in a responsive pleading is waived.[21] But "[b]ecause Rule 8(c)'s purpose is to give

---

[21] *See* Fed. R. Civ. P. 8(c); *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 771 (5th Cir. 2017).

No. 16-70003

the plaintiff fair notice, we recognize 'some play in the joints.'"[22] A defendant can avoid waiver if "(1) the defendant raised the affirmative defense at a pragmatically sufficient time, and (2) the plaintiff was not prejudiced in its ability to respond."[23] The Director thoroughly raised her argument that Jones's *Miranda* claim was time-barred and that the district court should not grant equitable tolling, and Jones had the opportunity to thoroughly brief his response. She therefore did not waive her statute of limitations argument.[24]

**B**

This said, we will affirm the district court's decision to treat Jones's application as timely. The one-year statutory limitations period for a person in state custody to bring a federal habeas claim is subject to equitable tolling if a petition shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."[25] The decision to grant equitable tolling is based in a flexible, case-by-case analysis, and so we review the district court's decision to apply equitable tolling for abuse of discretion.[26] While we have recognized that equitable tolling should only be available in "rare and exceptional circumstances,"[27] we have also observed that "'the statute of limitations must not be applied too

---

[22] *Motion Med. Techs.*, 875 F.3d at 771 (quoting *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008)).

[23] *Id.* (internal quotation marks omitted).

[24] Jones suggests that the Director waived the argument by not appealing the district court's decision to treat his petition as timely; he argues that by failing to re-raise the issue after the district court's order, the Director failed to raise it in the "present proceeding." But the district court's opinion and order altering its judgment vacated its previously final judgment and reopened the proceedings, setting a schedule for an amended petition and briefing. Jones's argument on this point therefore lacks merit.

[25] *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted).

[26] *Manning v. Epps*, 688 F.3d 177, 182 (5th Cir. 2012).

[27] *United States v. Wheaten*, 826 F.3d 843, 851 (5th Cir. 2016).

harshly' because 'dismissing a first . . . habeas petition is a particularly serious matter.'"[28]

The district court "[did] not reach [its conclusion that equitable tolling was warranted] lightly." First, it concluded that Jones had diligently pursued his rights. He promptly wrote to the district court asking it not to appoint Strickland as his federal habeas attorney, filed *pro se* motions to remove Strickland and to have co-counsel appointed, and wrote to Strickland directly to attempt to convince him to step down. During the state proceedings, he pointed out to Strickland that Strickland had previously failed to timely file the state writ application.[29] And after Strickland was appointed as Jones's federal counsel, Jones sent Strickland a letter specifically reminding him of what he believed to be a September deadline—because Strickland had told him that was the deadline—and asking him what steps he was going to take to file the petition. These reflected "multiple, timely steps toward ensuring competent habeas representation." Further, the district court observed that its appointment order—explicitly addressing the timeliness requirement—"could have reasonably caused Jones to relax his vigilance regarding the exact filing deadline, as well as his obligation to make sure Strickland met it."

We have scrutinized petitioners' failure to inquire about the status of applications for post-conviction relief even where their legal representation was arguably inadequate.[30] But this is not a case where the petitioner slept on

---

[28] *Manning*, 688 F.3d at 183–84 (quoting *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002)).

[29] The Director argues that this communication makes clear that the late filing of Jones's state petition was an afterthought, and that Jones's primary concern was that Strickland was not willing to engage with him on other potential claims. But the district court could reasonably conclude that this at least reflected concern on Jones's part about timely filing. *Cf. Holland*, 560 U.S. at 653 (observing that equitable tolling requires a fact-intensive inquiry).

[30] *See Palacios v. Stephens*, 723 F.3d 600, 606–09 (5th Cir. 2013); *Manning*, 688 F.3d at 185–87.

his rights for months after learning that his counsel had failed to timely pursue relief.[31] The district court did not abuse its discretion in determining that "Jones's independent efforts to avoid, to remove, and then to provide co-counsel for Strickland, all of which occurred during the period he seeks to toll, together with the appointment order, show that Jones exercised reasonable diligence in the pursuit of his federal habeas rights."

Second, the district court determined that extraordinary circumstances prevented Jones's timely filing: the existing tension between Jones and Strickland, compounded by the court's appointment order insisting on timeliness. It acknowledged that at base, the untimely filing was caused by Strickland's negligent miscalculation of the filing deadline—and that such a "garden variety" claim of excusable neglect ordinarily will not justify equitable tolling.[32] But here, the problem went beyond mere negligence. Jones and Strickland were trapped in a "mutually undesired attorney-client relationship that had broken down."[33] In response to Jones's concerns about Strickland's representation, the district court entered an order affirmatively addressing potential timeliness issues by ordering Jones—and by extension Strickland, the attorney who had just been appointed to represent him—to timely file the petition. The district court therefore concluded that while Jones had not demonstrated that Strickland engaged in "extreme neglect" or that his limited

[31] *Cf. Manning*, 688 F.3d at 187 ("Even if his counsel's course of conduct starting on November 17, 2000 would constitute due diligence if it had begun earlier, such activity does not negate the nineteen-month-long period during which Manning is not, as far as the record reveals, focus any attention on his petition for habeas relief.").

[32] *See Holland*, 560 U.S. at 651–52; *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007).

[33] The court observed that part of the hostility between Jones and Strickland was because Strickland refused to pursue what he believed to be frivolous claims—something Jones had no right to demand—but was also due to Strickland's failure to meet the state filing deadline. The Director argues that Jones's communications to Strickland demonstrate that his sole concern was Strickland's unwillingness to raise certain claims. But as we have explained, Jones also raised the issue of timeliness. The district court did not err in identifying timeliness as one concern Jones had with Strickland's representation.

mental capacity and resources while incarcerated were "severe obstacles" that prevented him from exercising his rights, the appointment order likely caused Jones to reasonably relax his vigilance.

The Director argues that these were not extraordinary circumstances because the district court expressly determined that Strickland did not abandon Jones. We recently declined to express a view on the burgeoning circuit split over whether attorney wrongdoing must amount to effective abandonment for it to constitute extraordinary circumstances warranting equitable tolling.[34] To be sure, we have observed that a "simple 'miscalculation' that leads a lawyer to miss a filing deadline" is insufficient to warrant equitable tolling where the attorney's conduct did not "cross the line between 'garden variety' neglect and attorney abandonment"[35]—but this case presents more than a simple miscalculation. The crux of the district court's decision to grant equitable tolling was that Jones "lodged multiple, timely requests to avoid counsel's appointment based, at least in part, on concerns about counsel's previous failure to meet a state deadline, and the Court nevertheless forced the continuation of a mutually undesired attorney-client relationship in an order that, while not misleading or preventing Jones from doing anything, probably caused Jones to relax his vigilance regarding the federal deadline." The district court did not abuse its discretion, especially given the flexibility we must accord it in determining whether to equitably toll the limitations period.[36]

---

[34] *See Jimenez v. Hunter*, 741 F. App'x 189, 192–93 (5th Cir. 2018).

[35] *Wheaten*, 826 F.3d at 852.

[36] For example, this case is unlike *Manning v. Epps*, where we held that a district court had abused its discretion in granting equitable tolling. In *Manning*, we held that precedent squarely required the petitioner to show that he had exercised due diligence even when represented by incompetent counsel, and therefore reversed the district court's finding of diligence based solely on the petitioner's actions once he was appointed by competent

## III

We turn next to Jones's Fifth Amendment claim. We review a district court's grant of summary judgment denying federal habeas relief de novo.[37] Under AEDPA, we evaluate claims decided on the merits by the state court for whether they were "contrary to, or involved an unreasonable application of, clearly established Federal law," or whether they "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[38] A decision is "contrary to" such clearly established federal law if it either "applies a rule that contradicts the governing law set forth" in the Supreme Court's holdings or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."[39] A state court unreasonably applies such law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[40] In reviewing state court decisions, we bear in mind that "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [the Supreme] Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error."[41]

---

counsel. *See Manning*, 688 F.3d at 183–87. Here, Jones persistently engaged with Strickland at all points of the state and federal proceedings.

[37] *Whitaker v. Davis*, 853 F.3d 253, 257 (5th Cir. 2017).

[38] 28 U.S.C. § 2254(d).

[39] *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). The governing Supreme Court precedent must have been clearly established at the time of the state court's adjudication. *See, e.g.*, *White v. Woodall*, 572 U.S. 415, 419–20 (2014).

[40] *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (quoting *Williams*, 529 U.S. at 413).

[41] *White*, 572 U.S. at 426 (emphasis omitted).

No. 16-70003

As we have explained, Jones was prosecuted solely for the capital murder of his aunt, but evidence was admitted at the punishment phase as to his role in the murders of Peoples and Sanders. That evidence included a written confession that Jones gave to authorities where he was only informed of his rights immediately before signing the confession. The Texas Court of Criminal Appeals held on direct appeal that the confession was taken in contravention of *Miranda v. Arizona*, but that its admission was harmless error under the Supreme Court's decision in *Chapman v. California*.[42] Jones argues that this was contrary to clearly established law because a confession to murder can never be harmless, and that at a minimum, the state court unreasonably applied the *Chapman* standard for harmless error.

## A

First, Jones argues that the Texas Court of Criminal Appeals' harmlessness determination was contrary to clearly established federal law because *Miranda* violations should not be subject to harmless-error analysis. He relies heavily on Justice White's opinion—joined by Justices Marshall, Blackmun, and Stevens—in *Arizona v. Fulminante*, which he characterizes as a plurality holding that *Miranda* violations are not subject to harmless error analysis.[43] There are several reasons why the state court's consideration of harmless error was not contrary to clearly established federal law. Most plainly, *Fulminante* addressed coerced confessions, not confessions taken in violation of *Miranda*.[44] And the *Fulminante* "plurality" Jones cites was in fact a dissent on the precise point at issue—Justice White explicitly acknowledged

---

[42] *Jones*, 119 S.W.3d at 770–83.

[43] 499 U.S. 279 (1991).

[44] *Id.* at 287–88. Jones shifts his characterization of the confession over the course of his briefing from having been taken in violation of *Miranda* to having been coerced. But he presents no argument that the confession was coerced, and no Texas court evaluated such a claim.

in the relevant section of the opinion that "five Justices have determined that harmless-error analysis applies to coerced confessions," and that portion was labeled as a dissent.[45] Other courts and treatises therefore correctly treat *Fulminante* as *holding* that the admission of a coerced confession is "trial error" subject to harmless-error analysis, as opposed to "structural error" not subject to such analysis.[46] In sum, no Supreme Court precedent holds that *Miranda* violations are not subject to harmless-error analysis, and the Court of Criminal Appeals' decision to apply harmless-error analysis did not conflict with clearly established federal law.

## B

Second, Jones argues that the Court of Criminal Appeals unreasonably applied *Chapman* in concluding that the admission of the confession was harmless beyond a reasonable doubt.[47] We disagree, mindful of the *Chapman* inquiry's fact-sensitive nature and the sizable deference we must accord a state court determination on the merits under AEDPA. The Court of Criminal Appeals concluded on direct appeal that given the other evidence introduced at the punishment stage, Jones's confession to the Sanders and Peoples murders did not impact—beyond a reasonable doubt—the jury's answer to the special issues of whether Jones was likely to commit future acts of violence and whether there were sufficient mitigating circumstances.[48] The jury was presented with extensive evidence that Jones murdered Peoples and Sanders.

---

[45] *Fulminante*, 499 U.S. at 282, 288, 295.

[46] *See, e.g.*, 3B Fed. Prac. & Proc. Crim. § 855 (4th ed.).

[47] *Chapman* requires a court to declare an error harmless beyond a reasonable doubt to excuse it as harmless error. *Chapman v. California*, 386 U.S. 18, 24 (1967).

[48] *Jones*, 119 S.W.3d at 777–83. Two judges dissented, writing that they "[w]ould not conclude, beyond a reasonable doubt, that the constitutional violation in admitting [Jones's] confessions to two additional murders at the punishment stage did not contribute to the jury's verdict for capital punishment," and would remand for a new trial on punishment." *Id.* at 803–04 (Womack, J., dissenting).

No. 16-70003

On cross-examination, Jones's sister testified that Jones had told her about the murders in detail that substantially mirrored what Jones included in his written confession.[49] An expert for the State also testified that when he interviewed Jones, Jones blamed his alter ego James for Bryant's death because he "wouldn't have killed his aunt if Red hadn't made him help kill Sanders and Peoples."[50] Jones's written statement confessing to the murders of Peoples and Sanders introduced some details that did not come out through other testimony at trial—most significantly, Jones's statement indicated that he and Roosa initially targeted Peoples because Roosa asked him if he knew anyone with money.[51] All told, however, the Court of Criminal Appeals determined that Jones's participation in the murders and details of the murders were "well established through other witnesses and evidence."[52] Jones did not dispute at trial or on appeal that he participated in the murders.[53]

The Court of Criminal Appeals also noted the extensive evidence of Jones's future dangerousness extending beyond the Sanders and Peoples murders: he brutally beat his aunt to death to steal money for drugs; had been convicted of several juvenile offenses, including for assaulting two teachers, possessing a handgun, and setting fire to another student's hair; and was a member of a gang.[54] In sum, it found that the written statement "did not carry the weight a confession might normally bear in light of the volume and weight of the other evidence . . . on the future dangerousness issue."[55] While it concluded that the prosecution's reference to the written confession in its

---

[49] *Id.* at 779–80 (majority opinion).
[50] *Id.* at 780.
[51] *Id.* at 782, 792.
[52] *Id.* at 780.
[53] *Id.* at 782.
[54] *Id.* at 780–81.
[55] *Id.* at 780.

closing argument was "somewhat troubling"—the prosecutor suggested that Jones was aware that Red was planning to kill Peoples because "it beg[an]" when Red asked Jones if he knew anyone with money—the court concluded that this reference did not play a significant role beyond "rhetorical flourish" in responding to the defense theory.[56] As a result, it found that "beyond a reasonable doubt . . . the erroneous admission of the [written] statement did not materially contribute to the jury's finding that there is a probability that [Jones] would commit criminal acts of violence that would constitute a continuing threat to society."[57]

As for the mitigation special issue, the court concluded that Jones's written confession to the Sanders and Peoples murders essentially emphasized that Jones was following Red's instructions—reinforcing "the basic defensive theory at the punishment stage that it was Red's bad influence that set appellant down the path toward his alter ego's murder of his aunt."[58] The confession "by no means belittled [Jones's] overall mitigation case"—which rested on evidence of Jones's dissociative mental disorder.[59] These observations led the court to hold that "had the [written] statement not been erroneously admitted into evidence, there is no reasonable likelihood that the jury might have returned an affirmative answer to the mitigation special issue."[60]

The CCA's decision on direct appeal, approved of in Jones's post-conviction proceedings, did not unreasonably apply *Chapman*. The court recognized and accounted for the significant impact that a defendant's confession has on a jury, and concluded that given the particularities of this

---

[56] *Id.* at 782.
[57] *Id.* at 783.
[58] *Id.* at 781.
[59] *Id.* at 782.
[60] *Id.* at 783.

trial record, it was confident beyond a reasonable doubt that the admission of the written confession did not affect the jury's answers to the special issues. Crucially, Jones never contested that he committed the murders described in the confession, and the information he provided in the confession was largely presented to the jury through other admissible avenues. Under our deferential review of the state court determination, we cannot disturb its conclusion.[61]

## IV

Finally, we conclude that the district court did not improperly deny Jones investigative funding under 18 U.S.C. § 3599(f). Section 3599(f) allows a court to authorize funding for "investigative, expert, or other services" that are "reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence." We review a district court's denial of funding under this section for abuse of discretion.[62]

In *Ayestas v. Davis*, the Supreme Court rejected our prior "substantial need" standard for reviewing challenges to denials of § 3599 funding. It held that the "substantial need" requirement was more demanding than the statute's requirement that the services sought be "reasonably necessary" to a defendant's post-conviction challenge.[63] It also made clear, however, that "[a] natural consideration informing the exercise of [the district court's] discretion is the likelihood that the contemplated services will help the applicant win

---

[61] To the extent that Jones argues that the confession in violation of *Miranda* led him to make other confessions to people who later testified at his trial, and that those confessions were "fruit of the poisonous tree," this misapprehends the sweep of the evidence against him, as well as the Supreme Court's statements on the matter. *See United States v. Patane*, 542 U.S. 630, 639 (2004) (explaining that "the *Miranda* rule 'does not require that the [otherwise voluntary] statements [taken without complying with the rule] and their fruits be discarded as inherently tainted'" (quoting *Oregon v. Elstad*, 470 U.S. 298, 307 (1985))).

[62] *See Ayestas v. Davis*, 138 S. Ct. 1080, 1094 (2018).

[63] *Id.* at 1092–93.

relief."[64] Therefore, "[p]roper application of the 'reasonably necessary' standard thus requires courts to consider the potential merits of the claims that the applicant wants to pursue, the likelihood that the services will generate useful and admissible evidence, and the prospect that the applicant will be able to clear any procedural hurdles standing in the way."[65]

Jones sought investigative funding to develop a potential claim under *Wiggins v. Smith*[66] that his trial counsel was ineffective for failing to sufficiently investigate and present mitigation evidence about Jones's social history, including his mental health, abusive childhood, and history of substance addiction.[67] The district court, writing before the Supreme Court decided *Ayestas*, offered several reasons for denying Jones § 3599 funding. It observed that "there is no question that [Jones's new federal habeas] counsel previously investigated, prepared, and was compensated for an amended petition containing substantially the same issues for which she now seeks funding." And it found that Jones had not demonstrated "reasonable necessity" for a 400-hour investigation costing $30,000, because Jones had failed to demonstrate sufficient likelihood that his trial defense team inadequately investigated the claims. Most clearly, Jones failed to address the testimony provided by the defense's mental health experts at trial—one of whom had interviewed Jones's family members and looked at relevant school, hospital, and police records, and the other of whom submitted a report addressing

---

[64] *Id.* at 1094 ("After all, the proposed services must be '*reasonably* necessary' for the applicant's representation, and it would not be reasonable—in fact, it would be quite unreasonable—to think that services are necessary to the applicant's representation if, realistically speaking, they stand little hope of helping him win relief.").

[65] *Id.*

[66] 539 U.S. 510 (2003).

[67] The funding would also partially contribute to investigating Jones's state habeas counsel's ineffectiveness, which would help combat the procedural default of his ineffective-assistance-of-trial-counsel claim.

Jones's history of drug and alcohol abuse and other factors in his history contributing to emotional disturbance.[68] Even though Jones identified "red flags" involving alcohol and substance addiction and childhood physical and sexual abuse, the district court concluded that he had not shown that he was likely to uncover anything beyond what his experts had already addressed: "[t]he funding statute is not designed to provide petitioner with unlimited resources to investigate speculative claims."[69] This was especially so where Jones sought services in excess of $7,500 and therefore needed to show that excess funding was "necessary to provide fair compensation for services of an unusual character or duration,"[70] but wholly failed to address this requirement.

Although the district court denied funding before the Supreme Court's decision in *Ayestas*, the denial did not hinge on our now-rejected requirement that Jones show "substantial need" for the funding. Instead, it viewed Jones's request for additional funding as effectively seeking a full retrial of the issues already litigated in the state court. *Ayestas* did not disturb the long-settled principle that district courts have discretion to separate "fishing expedition[s]" from requests for funding to support plausible defenses.[71] Because "the reasons the district court gave for its ruling remain sound after *Ayestas*,"[72] we conclude that remand is unnecessary and affirm the denial of funding.

---

[68] Jones argued that his trial investigator spent inadequate time investigating potential mitigation evidence and witnesses. He did not address the fact that his experts evidently reviewed and cited evidence on the precise issues he sought funding to investigate, or offer insight into why he viewed that investigation as deficient.

[69] While the district court acknowledged that a petitioner may be entitled to funding to investigate unexhausted claims of trial counsel ineffectiveness—on the premise that state habeas counsel was also ineffective—the court concluded that Jones had not demonstrated that he was likely to uncover further evidence.

[70] 18 U.S.C. § 3599(g)(2).

[71] *See Ayestas*, 138 S. Ct. at 1094–95.

[72] *Mamou v. Davis*, 742 F. App'x 820, 824 (5th Cir. 2018) (affirming denial of funding without remand where the district court found that the petitioner had failed to provide

No. 16-70003

## V

We affirm the judgment of the district court.

---

"sufficient detail" about the bases of his underlying ineffective assistance of counsel claim); *see Ochoa v. Davis*, 750 F. App'x 365, 372–73 (5th Cir. 2018) (per curiam) (affirming denial of funding without remand where the petitioner "ha[d] not explained how further investigation would yield evidence that is different from what was available at the time of his trial" and was instead "simply seeking to 'turn over every stone'").